**UNITED STATES of America, Appellee,**

v.

**John GOTTI, Appellant.**

**No. 1452, Docket 86–1230.**

United States Court of Appeals, Second Circuit.

Argued May 29, 1986.

Decided June 25, 1986.

Bruce Cutler, New York City (Slotnick & Cutler, P.C., Michael Shapiro, Mark M. Baker, of counsel), for appellant.

John Gleeson, Brooklyn, N.Y., Asst. U.S. Atty., for E.D.N.Y. (Reena Raggi, U.S. Atty., for E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., Diane F. Giacalone, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, Chief Judge, and NEWMAN and KEARSE, Circuit Judges.

FEINBERG, Chief Judge:

This case poses novel issues regarding the revocation of bail of a defendant under the Bail Reform Act of 1984, 18 U.S.C. § 3148(b). John Gotti brings this expedited appeal from an order of Judge Eugene H. Nickerson of the United States District Court for the Eastern District of New York, revoking Gotti's release on bail pending trial in order to protect potential witnesses in this case. Gotti contends that the judge erred in finding that he had intimidated a witness in a prior case, that due process bars detention based on that finding and that the judge abused his discretion in refusing to reopen the hearing on the issue. The appeal also raises questions regarding the government's burden of proof in bail revocation proceedings. We

find that the district court's findings are supported by the evidence, that there was no constitutional bar to its revocation of Gotti's bail and that refusal to reopen the proceedings was well within its discretion. We affirm.

## I.  Prior Proceedings

John Gotti and several codefendants were indicted in March 1985 for violating, and conspiring to violate, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.  The indictment charged Gotti with participating in various criminal activities of the Gambino organized crime family.  At Gotti's arraignment on March 28, 1985, Judge Nickerson ordered him released on a $1,000,000 personal recognizance bond secured by real property.

After jury selection had begun in April 1986, the district court, as it later characterized its action, "suspended that process and set August 18, 1986 as the date for recommencement of jury selection."  The government moved the next day to revoke Gotti's bail on the ground that he had violated conditions of his release, including continuing to participate in the illegal activities of the Gambino family.

The court held three days of hearings on the motion, at which 12 witnesses testified for the government.  New York City Police Sergeant Thomas Donohue and Police Officer Raymond Doyle, his partner, testified that on September 11, 1984, Romual Piecyk had complained to them of being recently beaten and robbed by two men in a white car.  Piecyk led the officers to a restaurant, near where he recognized the car.  Entering the restaurant, he pointed out John Gotti and Frank Colletta as his assailants.  The police officers arrested the two men.  Several days later, Piecyk testified before a state grand jury and again identified Gotti as the man who had beaten him.  The grand jury thereafter indicted Gotti on robbery and assault charges.

Sergeant Anthony Falco of the Queens County District Attorney's Detective Squad testified that Piecyk had lost touch with the prosecution some time after the return of the indictment.  In February 1986, Falco went to Piecyk's home to arrange for Piecyk's testimony in the case, which was soon to go to trial.  According to Falco, Piecyk stated he would not testify, saying that "because of Gotti's people" he was in fear of his life and his wife's safety.  Piecyk said he believed that Gotti's people had tampered with the brakes of the van he used, and had placed harassing telephone calls to his home late at night.  The police offered to provide protection and investigate the brake tampering incident, but Piecyk flatly refused.  Later, the police took Piecyk into custody as a material witness in the case.  Falco stated that Piecyk began to cry after he was brought to the station house.  After asking to speak to Falco alone, Piecyk explained that he was still afraid of "Gotti's people."  At the trial in New York Supreme Court, Queens County, Piecyk testified that he could not identify the person who had assaulted him in 1984; as a result, the state charges against Gotti were dismissed.

At the bail revocation hearing before Judge Nickerson, the government also presented the testimony of a DEA agent relating to information gathered from an informant familiar with members of the Gambino family.  Members of the family had told the informant that the key witness (Piecyk) in the state assault case had received a "kick in the ass," which the informant took to mean a warning not to testify.  Other agents related informants' reports that Gotti had become the head of the Gambino group in the months following the RICO indictment in 1985.

Gotti submitted two interviews of Piecyk by newspaper and television reporters.  In both, Piecyk denied being intimidated by Gotti and stated he had been mistreated by the police and the District Attorney's office.

On May 13, 1986, in a thorough opinion reported at 634 F.Supp. 877, the district court ordered Gotti's bail revoked.  First, the court found that while on bail Gotti had intimidated Piecyk and that he would do the same to witnesses in the pending RICO

trial if left at liberty. Concluding that nothing short of detention would prevent Gotti from doing so, the court ordered him detained pursuant to its "inherent power" to deny bail when necessary to protect witnesses. Second, the district judge found under the Bail Reform Act of 1984 probable cause to believe that Gotti had violated New York law while on bail by tampering with a witness,[1] and that Gotti was unlikely to obey any conditions of release. Therefore, the judge also ordered Gotti's bail revoked pursuant to 18 U.S.C. § 3148(b). Two days after the order was filed, Gotti moved to reopen the proceedings in order to allow Piecyk himself to testify. He presented an affidavit from Piecyk stating that neither Gotti nor anyone acting at Gotti's direction had ever threatened him concerning the state assault and robbery case. Judge Nickerson refused to reopen the bail revocation hearings. This appeal followed.

1. The court, however, rejected the government's claim that it had established probable cause to believe that Gotti had committed other crimes while on bail, e.g., RICO violations by actively taking part in activities of the Gambino family and an attempt to intimidate witnesses in a case other than the Piecyk matter.

2. Section 3148 reads, in pertinent part, as follows:
   § 3148. *Sanctions for violation of a release condition*
   (a) *Available sanctions.*—A person who has been released pursuant to the provisions of section 3142, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.
   (b) *Revocation of release.*—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which his arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of his release that he not commit a Federal, State, or local crime during the period of release shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

## II.

### A. Relevant statutory provisions

The provisions of the Bail Reform Act under which the district court revoked John Gotti's bail have not yet been construed in this circuit. Section 3148(b), which is reproduced in the margin,[2] allows the government to commence a bail revocation proceeding by motion. After a hearing on the motion, the judicial officer must order detention if he "finds" two conditions are satisfied. First, either probable cause to believe that the defendant has committed a crime, state or federal, while on release, or clear and convincing evidence that he has violated some other release condition. Second, either that there are no combination of conditions of release that will prevent the defendant from fleeing or posing a danger to the safety of the community or any other person, or that it is unlikely that he will abide by any condition.[3]

(1) finds that there is—
(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
(B) clear and convincing evidence that the person has violated any other condition of his release; and
(A) based on the factors set forth in section 3142(g), there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
(B) the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, he shall treat the person in accordance with the provisions of section 3142 and may amend the conditions of release accordingly.

3. These provisions appear in section 3148(b)(2). It is not clear whether there is a significant difference between the findings required by

■ This appeal requires us to examine the standards of proof applicable to both findings. To meet the requirement of section 3148(b)(1)(A), a judicial officer must find that "there is probable cause to believe" that a defendant has broken the law while on release. Judge Nickerson held that this meant that he had to find that it was "more likely true than false" that the person on release had committed a crime. We disagree. Neither the Bail Reform Act nor the law defining probable cause in other settings justifies this construction. In the context of a seizure, probable cause demands only a " 'practical, nontechnical' " probability that incriminating evidence is involved, not a "showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (Rehnquist, J.) (plurality opinion) (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). Also, in construing the Bail Reform Act, we have noted that Congress was aware that the "probable cause" standard is less demanding than a requirement of "substantial probability." *United States v. Contreras,* 776 F.2d 51, 53 (2d Cir.1985). We therefore hold that probable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer "warrant a man of reasonable caution in the belief" that the defendant has committed a crime while on bail. See *Texas v. Brown,* supra, 460 U.S. at 742, 103 S.Ct. at 1543. Judge Nickerson applied a more demanding standard. However, the district court's legal error was harmless, since it gave appellant the benefit of too stringent a test.

■ Subsection (2) of section 3148(b) also poses problems of burden of proof. With regard to the first finding required of the judicial officer in a bail revocation proceeding, relating to whether the person on release has committed a crime or violated any other condition of the release, subsection (1) of section 3148(b) provides specific standards of proof for the judicial officer: "probable cause to believe" in the former case (subsection (1)(A)), and "clear and convincing evidence" in the latter (subsection (1)(B)). In contrast, subsection (2) of section 3148(b) is more opaque. Neither paragraph (A) nor (B) of subsection (2) specifies the required standard of proof for the finding there called for. However, paragraph (2)(A) lumps together flight and danger, which does suggest that Congress expected the same burden of proof to apply to each risk in the context of a bail revocation proceeding. Also, specification of the "clear and convincing" standard in subsection (1)(B) of section 3148(b) and the absence of such a standard in subsections (2)(A) and (2)(B) suggests that subsection (2) requires a different and less demanding showing.

This scheme indicates that where there is probable cause to believe the released defendant has committed a crime, he may thereafter be detained upon a finding, by only a preponderance of the evidence, that no conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition. As we pointed out in *United States v. Chimurenga,* 760 F.2d 400, 405–06 (2d Cir.1985), proof by a preponderance of the evidence is the standard usually used in pretrial proceedings. We see no reason, in the absence of specific language or relevant legislative history, to depart from that general rule in this instance. It is true that in the context of an initial detention hearing held at a defendant's first appearance before a judicial officer, the government must prove the facts underlying danger to the community or to any other person by clear and convincing evidence. 18 U.S.C. § 3142(f). However, we do not be-

paragraphs (A) and (B) of subsection (2). For example, if the person on bail is, in the words of paragraph (2)(B) "unlikely to abide by any condition" designed to keep him from fleeing, then presumably under paragraph (2)(A) "there is no condition ... that will assure that the person

will not flee." Conversely, if no condition will prevent flight, it would seem that the person, in the words of paragraph 2(B), is also "unlikely to abide by any condition" meant to deter such flight.

lieve that the government bears the same burden under § 3148(b)(2) when it seeks to revoke bail even if, as is the case here, it does so to prevent tampering with witnesses before trial. The language of the Bail Reform Act reflects that § 3142 and § 3148 provide quite different avenues to detention before trial, see *United States v. McKethan,* 602 F.Supp. 719, 722 (D.C.D.C. 1985), and it does not seem logical that section 3148(b)(2) would borrow a standard of proof from section 3142(f), which concerns initial bail proceedings only. See *McKethan,* supra, 602 F.Supp. at 722 (§ 3142 applies in bail revocation proceedings only if judicial officer finds that conditions of release will be adequate). Accordingly, we hold that findings made under section 3148(b)(2) may be established by a preponderance of the evidence. This was the standard Judge Nickerson applied in finding it more likely than not that no conditions of release would prevent Gotti from intimidating witnesses and that he "is unlikely to abide by any conditions of release."

B. Review of the district court's findings

■ Appellant argues that the district court was clearly erroneous in finding that Gotti had committed the crime of tampering with a witness by intimidating Piecyk into refusing to identify him. This argument assumes—correctly, we believe—that the law in this circuit is that the clearly erroneous standard governs our review of Judge Nickerson's order. In a number of recent cases construing the Bail Reform Act of 1984 we have made clear that in reviewing detention and release orders, the clearly erroneous standard applies. See, e.g., *United States v. Melendez-Carrion,* 790 F.2d 984, 994 (2d Cir.1986); *United States v. Martir,* 782 F.2d 1141, 1146–47

(1986); *United States v. Colombo,* 777 F.2d 96, 100 (2d Cir.1985); *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985).[4] Therefore, unless we believe that the findings of the district judge were clearly erroneous or that he committed an error of law, we should affirm the judgment of the district court.

■ We cannot agree with appellant that the district court's findings were clearly erroneous. It is true that Piecyk's statements to Sergeant Falco might establish only Piecyk's subjective belief that Gotti was threatening him by arranging harassing telephone calls and the sabotage of a van used by him. But other evidence tended to show that Gotti or persons acting in concert with him did threaten the witness. An informant who had known members of Gotti's "crew" for twenty years and whose prior information had proved reliable told a DEA agent that several people associated with the Gambino family told him that Piecyk "had received a kick in the ass," or a warning not to testify. Gotti's statements on his arrest for assault also arguably showed a propensity to scare Piecyk into withdrawing his complaint. After Piecyk identified Gotti in the restaurant, police officers motioned to Gotti to come away with them. According to officer Doyle, Gotti first said "Do you know who I am?" Looking past the officers towards Piecyk, Gotti then said "let me talk to this guy." In light of this information and the statements Piecyk made to Sergeant Falco, we cannot say that the experienced trial judge was clearly wrong to find that John Gotti more likely than not had committed the crime of threatening Piecyk. And, *a fortiori,* the lesser included finding of probable cause to believe he had committed that crime was not clearly erroneous. Appel-

**4.** We realize that a divided panel of this court has very recently used language supporting broader appellate review, in the context of whether conditions of release would prevent a defendant's flight before trial. See *United States v. Berrios-Berrios,* 791 F.2d 246, 250–51 (2d Cir. 1986). It is difficult to square that language with our previous decisions, supra. In addition, the language concerning scope of review was

not strictly necessary to the decision in that case. The *Berrios-Berrios* panel remanded so that the district court could articulate its reasons for concluding that no conditions of release would assure the defendant's presence. Whatever the standard of appellate review, it is clear that the panel there believed that elaboration by the lower court was necessary for any meaningful review at all.

lant points out that some items of evidence might support contrary inferences. For example, he argues, the members of the Gambino family who threatened Piecyk may not have been acting at Gotti's direction. There is nothing to show, however, that the inferences the district court did draw from the evidence were clearly erroneous, or even implausible.

■ Nor did the court clearly err in finding that Gotti was unlikely to abide by any conditions of release. As the judge commented, Gotti was "bold, not to say reckless" to intimidate a witness and ascend to a position as head of the Gambino family while on bail under the RICO indictment. It was not unreasonable to conclude that conditions of release would not restrain such a person from attempts to undermine the integrity of the pending trial. Accordingly, we decline to set aside any of the trial judge's findings.

### III. Due process claim

■ Appellant also argues that the due process clause prohibits pretrial detention based on a prediction that a defendant will intimidate witnesses because he has done so in a prior case. He contends that detention under such circumstances amounts to punishment for future crimes, in violation of our decision in *United States v. Melendez-Carrion*, supra. The argument completely misreads our decision in that case. While the panel was divided on the constitutionality of prolonged detention on the basis of future dangerousness to society in general, the court unanimously reaffirmed the long-standing principle that pretrial detention does not offend due process when it is imposed to prevent a defendant from intimidating witnesses. Id., at 1002. Moreover, nothing in *Melendez-Carrion* suggests that a defendant's recent conduct

in another criminal proceeding should not be used to predict his behavior, while on bail, towards witnesses in a new case. Judge Newman found that due process barred all pretrial detention for the purpose of preventing future crimes not affecting the integrity of the judicial process. The writer of this opinion concluded that detention for dangerousness had degenerated into punishment on the facts of that case. Neither rationale limits the use of past acts to support a finding that a defendant is likely, as Judge Nickerson found, to tamper with witnesses or "pervert" the trial process.[5]

On the contrary, there are excellent reasons for resort to such evidence. All bail decisions rest on predictions of a defendant's future behavior. It would be anomalous to hold that such predictions cannot rest on a defendant's recent conduct in another proceeding, which may shed considerable light on his motive, capacity and propensity to commit certain acts if free on bail. See, e.g., *United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir.1986) (appearance record in previous trial evaluated as bearing on present risk of flight). There is no constitutional bar to the use of this evidence. Of course, Gotti can—and does—argue that his behavior in the state case has little probative value on the issues before us. But we have already rejected that argument in affirming the district court's findings and the inferences drawn from them.

### IV. Refusal to reopen hearing

■ Finally, Gotti contends that the district court abused its discretion when it refused, after rendering its decision, to reopen the hearing so that Gotti could call Piecyk to the stand. Appellant urges that the refusal was arbitrary and capricious because the judge had ruled during the

---

**5.** *Melendez-Carrion* considered the lawfulness of danger to the community only in the context of using this ground as the sole basis for pretrial detention. We had no occasion in that case to consider whether, in the context of bail revocation, danger to the community could lawfully be an additional requirement for pretrial detention, once a court has found probable cause to

believe that a defendant on bail had committed a new crime in violation of the conditions of his release. This issue is not before us on this appeal either, since Gotti has been found to pose a threat to the integrity of the trial process, rather than more generally a danger to the community.

hearing that he would not consider the intimidation of Piecyk in deciding whether to revoke bail. However, the record does not support appellant's claim that he was misled by the ruling. During the bail hearing, Gotti moved to strike all testimony relating to Piecyk. The judge denied the motion. Noting that the original assault complained of by Piecyk had been committed before Gotti was on bail, the court said it would admit testimony about the assault "but not for the purpose of showing that [Gotti] committed a crime while on bail." Following this ruling, Gotti's counsel consistently acted as if aware that the intimidation of Piecyk remained a key issue, although the original 1984 assault did not. Most tellingly, Gotti's counsel introduced information regarding the source of Piecyk's reluctance to testify in the state assault case, evidence relevant only to the question of intimidation. In memoranda to the court, counsel argued that the evidence did not show intimidation, not that the issue was out of the case. Although he cross-examined a government agent regarding the reliability of the informant's report that the Gambino family had given Piecyk a "kick in the ass," counsel never objected that the testimony went to an irrelevant issue. Gotti's claim that he was unfairly surprised by the trial court's reliance on the intimidation of Piecyk is without merit.

The refusal to reopen the proceedings to hear Piecyk's testimony was therefore not an abuse of discretion. The court had entered a decision after three days of hearings where the intimidation of Piecyk had been a central issue. Although Gotti's counsel had zealously cross-examined the government's witnesses at the hearing, he had never called Piecyk to testify or suggested that his presence was needed. Gotti's previous inaction, as well as the need for finality, weighed heavily against reopening.

In support of his motion to reopen, Gotti presented an affidavit signed by Piecyk stating that he had failed to identify Gotti at the state trial for reasons "unrelated to" any fear of Gotti. The affidavit tracked and systematically denied the findings made by the court in its decision to revoke bail. It denied that Piecyk had ever told Sergeant Falco that he was afraid of Gotti, that his employer's van had been tampered with, or that threatening calls had been made to his home. Piecyk's statement also denied that Gotti had said the words attributed to him upon arrest. The affidavit plainly contradicted the testimony of police officers Falco, Donohue and Doyle, which the trial court had found to be "thoroughly credible." Under the circumstances, it was not unreasonable to conclude that future testimony from Piecyk would be unreliable and immaterial to the decision whether to detain Gotti. The court's finding that Piecyk had been intimidated supported the inference that the intimidation might continue. Gotti's last-minute effort to produce him after the court had ruled, in addition to the conclusory and post hoc nature of the affidavit, arguably gave further support to that inference. Refusal to consider Piecyk's testimony after Gotti had failed to produce it in a timely fashion lay well within the court's discretion.

In addition to revoking appellant's bail under 18 U.S.C. § 3148(b), the district court ordered it revoked on the basis of its inherent power to detain a defendant when necessary to protect the judicial process. It may well be that the Bail Reform Act's explicit and detailed scheme for detention to protect witnesses should preclude the use of inherent powers to accomplish the same end. However, since we affirm appellant's detention on statutory grounds, we need not decide whether Congress intended to displace the exercise of inherent power in cases within the general area covered by the statute.

We affirm the judgment of the district court.