UNITED STATES of America, Appellee,

v.

James JACKSON, Defendant-Appellant.

No. 1368, Docket 87–1217.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1987.

Decided June 24, 1987.

Henry J. Steinglass, New York City, for defendant-appellant.

Maria T. Galeno, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Robert Hammel, Kerri Martin, Asst. U.S. Attys., of counsel), for appellee.

Before FEINBERG, Chief Judge, and MINER and MAHONEY, Circuit Judges.

FEINBERG, Chief Judge:

This appeal requires us once again to examine whether a defendant's pretrial detention to assure his appearance at trial comports with the Bail Reform Act, 18 U.S.C. §§ 3141–3156, and the United States Constitution. James Jackson brings an expedited appeal from an order of the United States District Court for the Southern District of New York, Richard Owen, J., refusing to set aside a pretrial detention order entered against Jackson by Magistrate Ruth Washington. Jackson argues that his detention on grounds of dangerousness is unconstitutional per se and that the district court abused its discretion in ordering his detention on the ground of risk of flight. He also contends that his detention will be so lengthy that it will violate the due process clause whether on grounds of dangerousness or risk of flight. Because we find that Jackson's detention on the ground of risk of flight complies with both the statute and due process, we affirm.

On February 2, 1987, Jackson was arrested on charges of conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. The following day, the government moved before Magistrate Washington for pretrial detention pursuant to 18 U.S.C. § 3142(e). At the subsequent detention hearing, both sides proceeded by proffer, and the magistrate, after stating her findings, ordered Jackson detained pending trial on grounds of both risk of flight and dangerousness.

Jackson was subsequently indicted with 15 other defendants for participation in a large narcotics conspiracy. On March 4, the parties appeared before Judge Owen for the first pretrial conference. After argument by counsel, Judge Owen denied Jackson's application to set aside the magistrate's order and continued the detention, apparently only on the ground of risk of flight. The judge set the case for trial on August 3. However, at the request of some defense counsel, the trial date was moved to late September; eventually September 21, 1987 was chosen. At the March 4 conference, Jackson's attorney made clear that he had no objection to such a trial date.

Later in March, Jackson's attorney sought, unsuccessfully, to have Judge Owen reconsider his detention order. These efforts were renewed on April 8, when Jackson obtained new counsel. Under questioning by the court, however, Jackson's new counsel did not present any new evidence, and the judge adhered to his prior determination. Jackson subsequently sought review in this court of the pretrial detention order, and the appeal was argued on May 27.

I. Statutory Issue

We first consider Jackson's contention that the district court did not make adequate findings to support its order of detention on the ground of risk of flight. Although the district court should have made more concrete findings, we find no reversible error here.

The issue before the district court on the government's motion was whether any "condition or combination of conditions will reasonably assure the appearance of the [defendant]." 18 U.S.C. § 3142(e). To order detention, the court must find by a preponderance of the evidence that the defendant presents a risk of flight, and, if it finds such a risk, that no conditions could reasonably assure the defendant's presence at trial. *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir.), cert. dismissed, — U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568

(1986). In making its determination, the court should look to the nature and circumstances of the offense charged, the weight of the evidence against the defendant and the history and characteristics of the defendant. 18 U.S.C. § 3142(g). The court's factual findings will normally be reviewed under a clearly erroneous standard, *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986), but where the court does not consider the statutory factors in reaching its conclusion, we will apply a more flexible standard of review. *United States v. Shakur*, 817 F.2d 189, 197 (2d Cir.1987).

In this case, the district court found that Jackson presented a risk of flight such that no conditions could reasonably assure his presence at trial. Rather than making explicit findings of fact, however, the court relied principally on the statutory presumption that no conditions can reasonably assure a defendant's presence at trial where the defendant is charged with a narcotics offense with a possible penalty of imprisonment for ten years or more. See 18 U.S.C. § 3142(e). The district court also relied on statements by Jackson's mother to government agents that her son did not live with her and on the absence of male clothing in her home as revealing a "state of mind as to rootlessness." Beyond these explicit findings, the district court cited only "all the other factors." Since this consideration of the statutory factors on the record was inadequate, we apply a "flexible standard" of review. Nonetheless, we affirm.

At the detention hearings before the magistrate and the district court, the government charged that Jackson is the "mastermind" of a major heroin distribution network operating from Connecticut to Washington, D.C. It contended that it had overwhelming evidence from nine different confidential sources to support its allegations, including first-hand testimony of Jackson's involvement in heroin deals. In addition, the government stated that it had a ledger, seized from the apartment of Jackson's girl friend, showing substantial gross sales by Jackson's organization. The government also argued that Jackson's organization had used violence to maintain its territory and collect payments due it and

expressed its intention to seek a continuing criminal enterprise indictment against Jackson that would carry a maximum sentence of life imprisonment without parole.

As to Jackson's personal characteristics, the government cited a criminal record dating back 22 years. It asserted that although Jackson can show only sporadic employment at best, he has owned expensive cars registered in the names of others. Finally, the government added that Jackson has used a number of aliases, has stated that he lived from hotel to hotel and has shown skill in avoiding surveillance.

■ In challenging the detention order in this court, Jackson relies principally on the district court's failure to make findings and to explicitly consider possible conditions of release. While the district court was remiss in this regard, such failure is not necessarily reversible error if the record clearly supports the district court's ultimate conclusions. See *United States v. Martir*, 782 F.2d 1141, 1146–47 (2d Cir. 1986). Were this a closer case, however, we would not hesitate to remand to the district court for further findings.

■ On the merits of the detention order, however, Jackson offers little to rebut the government's showing. Jackson cites his proffer to the district court that his mother made her statement to the government agents under pressure, that he did not flee prior to his arrest although he knew he was under investigation, that in the past he did not fail to appear to face serious charges, that various parties have offered $250,000 worth of real estate as collateral for his release and that he has a job waiting for him with his local pastor.

In light of the combination of the government's proffer and the statutory presumption in a narcotics case, we find that the government satisfied its burden. We begin, of course, with the presumption imposed by Congress that, following a narcotics indictment under which the defendant faces at least ten years of imprisonment, no conditions will suffice to assure appearance at trial. This presumption of risk of flight continues to furnish "some weight"

in favor of detention even when the defendant has come forward with evidence to rebut it. *Martir*, 782 F.2d at 1144.

In addition to the presumption, the government has shown that each of the statutory factors weighs in favor of detention in this case. The nature of the offense is such that Jackson faces the possibility of a severe sentence and, as already noted, the crime charged "involves a narcotic drug." 18 U.S.C. § 3142(g)(1). As to the weight of the evidence, the government apparently has numerous informants as well as physical evidence to support its charges. Indeed, Jackson has made no significant attack on the government's proffered evidence. As to Jackson's personal characteristics, the government has shown an extensive criminal history, a general lack of ties to the community, hidden assets and the use of false names. In the absence of a substantial response by the defendant, we have held similar facts adequate to satisfy the statutory requirements for pretrial detention to assure presence at trial. See *Martir*, 782 F.2d 1141; *United States v. Gonzales Claudio*, 806 F.2d 334, 338–39 (2d Cir.1986). Accordingly, on these facts we cannot say that the district court committed reversible error under the statute in ordering pretrial detention.

## II. Constitutional Issue

■ Jackson also contends that his continued pretrial detention on the ground of risk of flight violates the due process clause of the fifth amendment. It is settled in this circuit "that at some point and under some circumstances, the duration of pretrial detention [to assure presence at trial] becomes unconstitutional." *Gonzales Claudio*, 806 F.2d at 339. We have previously identified the factors a court must consider in deciding whether "a defendant's pretrial detention exceeds the 'flexible standards of due process.'" *United States v. Melendez-Carrion*, 820 F.2d 56, 59 (2d Cir.1987). The court must consider "the length of detention that has occurred and the non-speculative aspects of future detention, the extent to which the prosecution bears responsibility for the delay in

starting the trial, and the facts concerning risk of flight." *Id.* at 59 (quoting *Gonzales Claudio*, 806 F.2d at 343). On the facts of this case, we find no due process violation at this time.

We begin with the length of detention. The defendant has been held for nearly four months as of the argument of this appeal. Were that the full extent of his detention, it would not be long enough to carry the day for Jackson. His trial, however, is not scheduled to begin until late September, when his detention will have lasted nearly eight months. Beyond that, the length of detention becomes somewhat speculative: Jackson argues that the trial will continue until January. The government contends that proceedings may end much sooner. One can reasonably say at this time, however, that Jackson's detention may well last more than eight months. Although detentions of this and greater duration on the ground of risk of flight have been upheld by this court, see *Melendez-Carrion*; *Berrios-Berrios*, 791 F.2d at 252, a potentially long trial commencing over seven months after detention has already begun raises grave due process concerns for the government to allay.

In response, the government relies on its showing that the trial date was originally set for early August, but was postponed until late September at the defendants' request and with the consent of Jackson's attorney. In light of this strategic decision to postpone the trial, Jackson cannot blame the government for the delay that resulted, which accounts for nearly seven additional weeks of pretrial detention. Thus, at this time, we do not find that the length of the detention weighs in Jackson's favor.

As to the second factor, the extent of the government's responsibility for the delay in starting the trial, the same considerations considerably weaken Jackson's argument. Given the circumstances of the case, we can hardly condemn the government for not commencing the trial before the September date. Jackson has, however, alleged that the government has been dilatory in producing discovery, and the govern-

ment, for its part, has indicated an intention to file a superseding indictment that would add more charges against Jackson and could further complicate this multi-defendant criminal action. These factors have not yet resulted in a postponement of the September trial date, so they cannot currently be viewed as contributing to a delay. If the trial is postponed further, however, we would take any government responsibility for the delay very seriously, in considering a renewed bail application by Jackson.

We have previously indicated that when the government moves for pretrial detention it has an obligation to arrange for the trial as quickly as possible, using "extraordinary means" if necessary. See *United States v. Salerno*, 794 F.2d 64, 79 n. 2 (2d Cir.1986) (Feinberg, C.J., dissenting), rev'd, — U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Gonzales Claudio*, 806 F.2d at 342 n. 5. We write now to make completely clear that we will not view this obligation of the government lightly. At this time, however, we cannot say that the government bears significant responsibility for the delay in this case.

Finally, we turn to the strength of the evidence indicating risk of flight. In view of the circumstances of this case, "we are entitled to apply a broader standard of review in determining the extent to which the facts regarding risk of flight ... have significance on the constitutional issue of whether continued detention violates due process limitations." *Gonzales Claudio*, 806 F.2d at 343 (citations omitted). Applying this standard to the evidence discussed in Part I, we conclude that the government has made a very strong showing of risk of flight. Given the lack of support Jackson can claim from the other factors at this time, his continued detention does not violate the due process clause of the fifth amendment.

Since we affirm Jackson's continued detention on risk of flight grounds, we need not consider whether he may properly be detained as a danger to the community.[1]

The judgment of the district court is affirmed.

---

1. We do note, of course, that the Supreme Court has recently held that such detention is not unconstitutional per se. See *United States v. Salerno*, — U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).