UNITED STATES of America, Appellant,

v.

Mauricio LONDONO–VILLA, Appellee.

Dockets 90–8015, 90–1169.

United States Court of Appeals, Second Circuit.

Argued March 1, 1990.

Decided March 13, 1990.

Elizabeth Glazer, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. S.D. New York, of counsel), for plaintiff-appellant.

Jack T. Litman, New York City (Richard M. Asche, Scott B. Tulman, Litman, Ashe, Lupin & Gioiella, New York City, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, NEWMAN and WALKER, Circuit Judges.

## PER CURIAM:

The Government has moved to reverse the order of the United States District Court for the Southern District of New York, Peter K. Leisure, *Judge*, releasing the defendant, Mauricio Londono–Villa, on bail after conviction and pending sentence. The defendant had been incarcerated without bail before trial under orders of a magistrate in Florida (October 25, 1989), Magistrate Michael H. Dolinger in New York (November 16, 1989), Judge Milton Pollack in New York (November 17, 1989), and Judge Leisure (January 10, 1990), the last despite numerous letters from friends, family and co-workers of the defendant attesting to his good character. The judge signed an order of immediate release on February 28, 1990, stating that "substantial questions of law or fact" would be raised on appeal of the conviction and, operating under 18 U.S.C. § 3143(a) (1988), found by clear and convincing evidence that the defendant no longer posed a risk of flight. The court, relying in part on the defendant's and his family's demeanor at trial and in part on the defendant's character witnesses who testified as to his reputation for honesty and law-abidingness, imposed conditions including: (a) the posting of a $1 million bond secured by a house owned by defendant's sister and brother-in-law in California and having $1 million equity, the bond being signed by them as well as defendant; (b) the surrender of defendant's and his wife's passports; (c) the execution of a waiver of extradition applicable to any country in which he may be found; and (d) the promise that he and his wife reside at the sister's and brother-in-law's California home, with restriction on travel to 100 miles from the house and to the Southern District of New York for appearances in court and meetings with counsel and the Department of Probation, coupled with monitoring of his whereabouts through the use of a luma phone.

█ We reverse the court's order of release and hold that the court's finding by clear and convincing evidence that the defendant did not pose a risk of flight was clearly erroneous for the following reasons:

1. Defendant was convicted both of conspiracy to import 150 kilograms of cocaine into this country from Medellin, Colombia, and aiding and abetting the importation of 111 kilograms, the convictions subjecting him to a mandatory minimum sentence of ten years and, on one of the counts, to a potential Guidelines range of 292–365 months' imprisonment and thus has a powerful incentive to flee that did not exist pre-trial;

2. Defendant, as a 29–year–old commercial pilot whose job was flying for Avianca Airlines and who possesses a proven familiarity with clandestine foreign airstrips, facing such sentences and armed with the financial resources that his own and his wife's family are said to have and having few ties to the community, would have little difficulty and great incentive to hire the use of a plane to fly himself and his spouse to Mexico or Central America and thence to South America;

3. Although the loss of a $1 million home would be a substantial blow to his sister, a top California real estate agent, and her husband, the sum of money involved or potentially involved in the drug

conspiracy and transaction in which the jury found the defendant to have participated, albeit in a tangential way (guiding a plane to an airstrip in Colombia at which it was to pick up the cocaine), dwarfs the $1 million;

4. We have taken into account the court's statement that defendant was a "minor participant in the alleged scheme . . . [who] filled in as a favor for a friend as a pilot at the last minute," but there was also evidence, the Government represents, that the defendant knew one of the owners of the cocaine, worked for a friend of another owner, flew with a pilot to the secret airstrip in Colombia, tested the cocaine and helped to load it on the airplane, and assured the other pilot that he would guarantee the shortfall of 39 kilograms, to the benefit of which evidence, given the jury verdict, the Government was entitled;

5. We note the district court's reliance on the demeanor of the defendant, his family and his witnesses, but do not believe that is determinative on the issue of risk of flight after conviction. We fail to see how such subjective assessments can, on their own, satisfy the heightened burden of proof placed on the defendant to establish that he is not likely to flee by clear and convincing evidence, particularly given the not unreasonable presumption that the defendant concealed his criminal activities from his family in the past; and

6. Finally, we note that the defendant may have at least one substantial issue for appeal of his conviction—the question of the extent and necessity of his knowledge that the cocaine in question was destined for importation into the United States, a question on which we, of course, express no opinion. That factor, however, is implicated only if a court first correctly determines that clear and convincing evidence exists that the defendant is not likely to flee.

*See generally United States v. Shakur,* 817 F.2d 189, 200 (2d Cir.1987) (errors of law and clearly erroneous findings of fact impact ultimate finding that defendant poses no serious pre-trial risk of flight). Doubtless defendant can seek to have sentencing, which we understand to be set for May 1990, and the hearing of the appeal expedited.

Order reversed.[1]

JON O. NEWMAN, Circuit Judge, dissenting:

Though I agree that the circumstances of this case would readily support a finding that the defendant *is* a risk to flee, I respectfully dissent from the Court's conclusion that Judge Leisure was clearly erroneous in finding that the demanding conditions of bail that he ordered sufficed to assure that the defendant is *not* a risk to flee.

The defendant has been convicted of conspiring to import cocaine into the United States and aiding and abetting importation. He wishes to appeal so that he can challenge the instruction that informed the jury, in answer to its specific inquiry, that knowledge that the cocaine was destined for the United States was not required for conviction. Judge Leisure has concluded that this issue is substantial. *See United States v. Quemener,* 789 F.2d 145, 156 (2d Cir.) (drug laws apply "to citizens of any country, acting anywhere in the world, as long as there is an intent to import the controlled substance into the United States"), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 58 (1986).

Having reached that conclusion, which the Court does not disturb, Judge Leisure then examined a proposed combination of bail release conditions that included the posting of a $1 million bond co-signed by his sister and brother-in-law who reside in the United States, the security of their home in California, which has been appraised at more than $1.4 million and has equity in excess of $1 million, the monitoring of defendant's whereabouts by use of a luma phone, the surrender of defendant's

---

**1.** Our colleague's strong dissent might be more persuasive were it not for the standard of evidence imposed by the applicable statute upon the district judge in finding no likelihood of flight, namely, the "clear and convincing" standard. It simply cannot be said that the evidence that the defendant is not likely to flee by virtue of the bail imposed was "clear and convincing."

passport, and the execution by the defendant of a waiver of extradition. The District Judge found, based on his assessment of the credibility of the family members and other character witnesses who testified at trial, that the bail release conditions adequately assured that the defendant would not flee. He made these findings by the requisite standard of clear and convincing evidence. 18 U.S.C. § 3143(a) (1988).

"[I]n reviewing detention and release orders, the clearly erroneous standard applies." *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir.1986). We have regularly applied that standard in upholding district court findings that a defendant was likely to flee. *See United States v. Jackson*, 823 F.2d 4, 5–7 (2d Cir.1987); *United States v. Gonzales Claudio*, 806 F.2d 334, 338–39 (2d Cir.1986); *United States v. Melendez–Carrion*, 790 F.2d 984, 994–95 (2d Cir. 1986); *United States v. Martir*, 782 F.2d 1141, 1146–47 (2d Cir.1986). We have also faithfully applied that standard in the rare instances where the Government has appealed a district judge's finding that conditions of bail sufficed to assure that a defendant was not likely to flee. *See United States v. Chimurenga*, 760 F.2d 400, 405–06 (2d Cir.1985); *cf. United States v. Colombo*, 777 F.2d 96, 99–100 (2d Cir.1985) (rejecting as clearly erroneous findings that conditions of bail were sufficient to protect the community from a defendant found to be dangerous if released).

In the one reported instance where we have rejected a finding that a defendant would not flee, we emphasized the district court's failure to accord proper significance to the defendant's four-year status as a fugitive and his defiant and frivolous refusal to recognize the jurisdiction of the district court. *See United States v. Shakur*, 817 F.2d 189, 198–201 (2d Cir.), *cert. denied*, 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987). No circumstances like those in *Shakur* are remotely present in this case. On the contrary, during the more than two year period after the Government's filing of a complaint and seizure of the cocaine, which surely alerted all the conspirators to their vulnerability to arrest, the defendant pursued his regular occupation as a pilot for Avianca Airlines, flying into the United States, either as a pilot or a passenger, more than 65 times. On each occasion, he was subject to the scrutiny of agents of the United States Customs Service and the Immigration and Naturalization Service. He was also issued a visa by the State Department.

Despite the rigor with which we have applied the clearly erroneous standard to findings of flight, the Court rejects Judge Leisure's finding that this defendant is not a risk to flee. The Court recites several factors that point toward risk of flight and would surely support a finding of such risk: The defendant has been convicted of a serious drug offense, he faces a minimum ten year sentence, and he has the skills and resources to fly out of the country. Mention could also be made of the fact that the defendant is a Colombian citizen. However, the Court dismisses rather casually the critical factor that persuaded Judge Leisure that the defendant is not likely to flee: The forfeiture, in the event of flight, of the valuable home of his sister and her husband. The Court apparently believes that the defendant is perfectly willing to see his sister lose her home. In the Court's view, Judge Leisure's positive assessment of the family members and their close ties may be discarded because the defendant did not inform them of his criminal activity, and the prospect of losing the sister's principal asset will not deter the defendant because the sum of money involved in the conspiracy far exceeds the equity in the home.

Having never seen the defendant nor heard the testimony of his sister, the other family members, and the distinguished character witnesses, I do not know whether he is willing to see his sister lose her home, but I have no adequate basis for concluding that Judge Leisure was clearly erroneous in finding that he is not. The fact that the family members did not know of his crime does not undermine their tangible display of faith in him now that they are aware of the jury's verdict. And though the conspiracy involved large sums, we have been given no reason to believe that this defendant gained or has access to profits that will enable him to buy his sister another $1 million home.

The Court thinks the defendant is likely to flee and precipitate the loss of his sister's home. Judge Leisure, who saw the family members and heard their testimony, thinks that the prospect of forfeiting that home, together with the other stringent conditions of release, makes it unlikely that he will flee. In the absence of any reason to think that the able District Judge misunderstood the relevant legal standards or arbitrarily overlooked significant evidence or relied on evidence that we can confidently say is worthless, it is his call. In the context of reviewing a district court's findings as to risk of flight, we have explicitly emphasized "the deference to the district court that the clearly erroneous rule embodies." *United States v. Martir,* 782 F.2d at 1147. That standard has heretofore been faithfully observed no matter which way a district court ruled. I regret that such even-handedness in reviewing bail findings is one of the early casualties in the war on drugs.