**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEV ASLAN DERMEN,

    Defendant - Appellant.

No. 20-4000
(D.C. No. 2:18-CR-00365-JNP-BCW-3)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **LUCERO**, and **CARSON**, Circuit Judges.
_____

Lev Aslan Dermen appeals from the district court's order continuing his

pretrial detention.  Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C.

§ 1291, we affirm.

## Background

This is Dermen's third proceeding before this court concerning the district

court's detention orders.  The factual and procedural background through June 2019,

_____

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

including the basis for the district court's detention orders and trial continuances, is described at length in our previous decision, *United States v. Dermen*, 779 F. App'x 497 (10th Cir. 2019) (unpublished) (*Dermen I*), and we do not repeat it here other than as necessary to provide context for our consideration of Dermen's current claims.

As noted in *Dermen I*, Dermen did not appeal the district court's initial flight risk determination and order detaining him pending trial. But he filed an unsuccessful petition for writ of mandamus after the district court continued the trial date for the second time and denied his request for reconsideration of his release. And he appealed the district court's denial of his motion for release and for detention review under 18 U.S.C. § 3142(f)(2), which he filed after the court granted a third continuance. In affirming that order, we agreed with the district court that Dermen was not entitled to a detention review under § 3142(f)(2) because he did not present new information to warrant reopening the detention hearing. *Dermen I*, 779 F. App'x at 502. We also rejected his argument that he was entitled to release under the 90-day detention provision of the Speedy Trial Act, 18 U.S.C. § 3164(b), finding no clear error in the district court's speedy trial exclusions and its determination that he had not shown that the trial delays were not attributable to him or his counsel. *Id.* at 506. Finally, we rejected his argument that he was entitled to release under the Due Process Clause, upholding the district court's determinations that the length of his detention was not constitutionally excessive under the circumstances, that the defense

was responsible for most of the trial delays, and that compelling evidence supported his continued detention as a flight risk. *Id*. at 507.

Since June 2019, when *Dermen I* was issued, the district court continued the trial date four more times—each time at Dermen's request—and found that none of these continuances was the fault of the government. Both parties sought the first of these continuances after the other four defendants pled guilty and started cooperating with the government in its prosecution of Dermen. Dermen sought the second continuance, citing delays in receiving discovery materials from the government and what he characterized as changes in its theory of the case. Although the government disputed that it had changed its theory of the case, it acknowledged that the codefendants' cooperation with the government generated new evidence and discoverable material, and did not object to the requested continuance. Dermen sought the third continuance because he needed additional time to review complex financial documents obtained from international banks and from the country of Luxembourg pursuant to a Mutual Legal Assistance Treaty request by the government. And he requested the fourth continuance saying the defense could not be ready for trial because of the volume of complex financial records the defense team had not yet reviewed and citing the need to hire a forensic accountant to evaluate those records. Trial finally began on January 27, 2020, and is expected to last until sometime in March.

Dermen filed the motion to reopen the detention hearing and for review of detention at issue here in November 2019, after the district court granted the fourth

3

post-June 2019 continuance and set the January 2020 trial date. As in his previous motions, he maintained that his continued detention violates both the Bail Reform Act and due process, this time arguing that changed circumstances and new information uncovered in discovery undermined the district court's previous flight-risk determinations.

The district court granted Dermen's motion to reopen the detention hearing based on his new flight-risk evidence, which is described below. The government argued at the reopened hearing that Dermen's continued detention was necessary not only because he is a flight risk but also because he is a danger to the community. The court granted the parties' request to file supplemental briefs on dangerousness. The parties did not request another hearing on dangerousness and the court did not hold one.

As discussed more fully below, the court denied Dermen's motion for review of his detention, finding that he is both dangerous and a flight risk and that his continued detention does not violate due process. Because of the sensitive nature of the dangerousness evidence, the court issued its order under seal and ordered that the materials in the record addressing that issue, including the parties' supplemental briefs and portions of the hearing transcript, be sealed.

## Discussion

**A. Legal Standards**

A defendant may be detained pending trial if the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The court may make such a finding only after holding a hearing under § 3142(f). *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). In making its decision, the court must consider the following four factors: the nature and circumstances of the charges, the weight of the evidence, the defendant's history and characteristics, and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g). The government has the burden of proving by a preponderance of the evidence that the defendant presents a risk of flight and by clear and convincing evidence that he presents a danger to the community. *Cisneros*, 328 F.3d at 616.

After the initial detention decision is made, the district court may reopen the detention hearing if it finds that (1) new information exists that was unknown to the movant at the time of the initial detention hearing; and (2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of the community. § 3142(f)(2).

We review de novo mixed questions of law and fact concerning the detention decision, but we review any findings of historical fact for clear error. *Cisneros*, 328 F.3d at 613. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted).

5

"On clear error review, our role is not to re-weigh the evidence; rather, our review of the district court's finding is significantly deferential." *Id*. at 515-16 (internal quotation marks omitted).

### B. Arguments on Appeal

### 1. Flight-Risk and Dangerousness Determinations

Dermen argues that the district court clearly erred by finding that he is dangerous and a flight risk. He also challenges several procedural aspects of the district court's rulings. Because we find no clear error in the flight-risk determination, we need not consider Dermen's challenges to the dangerousness determination, including his contentions that the district court erred by not holding a hearing on dangerousness after the parties filed their supplemental briefs and that it considered improper *ex parte* evidence on that issue.

As an initial matter, we reject Dermen's contention that the district court erred by failing to specifically address each of the § 3142(g) factors in its order. The court addressed those factors in detail in its initial detention order and nothing in the statute requires the court to consider them again after reopening the hearing. Indeed, as § 3142(f)(2) makes clear, the sole purpose of reopening a detention hearing is to give the moving party an opportunity to present evidence that was unavailable at the initial detention hearing. Here, the new evidence Dermen presented focused on discrete aspects of the district court's flight-risk determination, and both parties presented new evidence regarding whether he presents a danger to the community. The parties' new evidence framed the issues to be considered at the reopened

6

hearing, and there was no reason for the district court to consider issues unrelated to the new evidence.

As explained in *Dermen I*, the key evidence supporting the district court's initial flight-risk determination was that Dermen has substantial assets in Turkey, including real estate, a yacht, and sizeable bank accounts; he spent significant time in Turkey for several years before his arrest; he and entities under his control funneled millions of dollars into Turkey's economy; he told several government witnesses that if he were ever criminally charged, he would flee to Turkey; he has access to a private jet and has entered and exited the United States without detection by the American government; and Turkey refuses to honor extradition requests from the United States. Based on this and other evidence, including his failure to comply with civil court orders to appear for depositions for other cases, the court concluded that Dermen has both the motive and ability to abscond to Turkey and that no condition or combination of conditions would reasonably assure his appearance at trial. 779 F. App'x at 499.

In his motion to reopen, Dermen argued that three areas of new information undermined the district court's previous finding that he was a flight risk. First, he maintained that some of the assets in Turkey relied on to support the initial flight-risk determination (the yacht and a home in Istanbul) are not legally his, and that one of the wire transfers thought to have been sent to his bank account in Turkey was actually sent to a different account that he did not have access to. But the government presented evidence, including from the now-cooperating codefendants,

7

about fraud proceeds sent to Turkey for Dermen's benefit, and his pattern of holding few assets in his own name and benefitting instead from assets held by others. Although Dermen maintained that he lost access to some of those assets after the codefendants pleaded guilty, the government noted that their Turkish assets have not been forfeited and that even if the court were to enter a forfeiture order there is no assurance that the Turkish government would execute it. The district court concluded that despite Dermen's new information regarding the one challenged wire transfer and ownership of the yacht and house, he still had access to significant assets in Turkey. Specifically, the court noted that the government's evidence about Dermen's "other financial transactions with Turkish bank accounts remains largely unchallenged" and that he failed to refute the government's evidence, including "compelling new information" from two codefendants, that he still has access to "substantial funds in Turkey from the alleged fraud." Aplt. App., Vol. 8 at 2006.

Second, Dermen presented evidence challenging the government's claims and the court's findings about his ability to enter and exit the United States without detection. In particular, he disputed the court's finding that he "failed to rebut the government's assertion that he conspired with a corrupt Department of Homeland Security official to ensure that [his] business associate would be permitted entrance into the United States despite being barred from the country due to a criminal record and an outstanding arrest warrant." Aplt. App., Vol. 2 at 553 n.7. But the government presented new evidence from the codefendants that buttressed the evidence it presented at the initial detention hearing about Dermen having fled to

8

Turkey for five months in 2017 after the execution of the California search warrant. The court acknowledged Dermen's evidence that he did not conspire with the DHS official "to facilitate the entry of non-citizen felons," but rejected his argument that this new evidence undermined the court's previous flight-risk determination, noting that he "has proven that he personally has the ability to evade detection" at the border. *Id*., Vol. 8 at 2007. The new evidence thus failed to "assuage the court's primary concern" that if released, Dermen had the ability to abscond to Turkey without detection. *Id*.

Third, Dermen took issue with the district court's rejection of his claim that he returned to the United States after the 2017 trip to Turkey despite his belief that the California investigation would result in criminal charges and its suggestion that it was more likely that he came back voluntarily because he was unaware of the gravity of the investigation into his business dealings and the "degree of criminal exposure he was facing." *Id*., Vol. 2 at 552 n.6. Dermen presented evidence at the reopened hearing that he was aware of the federal investigation when he returned to the United States and he suggested that knowing about the scope of the federal investigation meant he also knew about the gravity of the California investigation because the two investigations overlapped and had the same objective. But the government argued that, although Dermen may have known about the state search warrant before returning to the United States, he was not aware until he was arrested in August 2018 that the investigation had turned its focus onto his involvement. The government also presented new information based on interviews with one of the codefendants

9

suggesting that, contrary to Dermen's representations, he had intended to flee the country in December 2017. Based on its evaluation of the parties' evidence and Dermen's failure to present evidence that he was aware when he returned to the country that he had become the focus of the California investigation, the court found that he was in fact planning to flee to Turkey.

We find no clear error in the district court's findings of historical fact, and we agree with its observation that "[d]espite the volume of new information," Dermen presented in his motion to reopen the detention hearing, he successfully challenged "very few of the conclusions" the previous detention orders were based on. *Id*., Vol. 8 at 2022. And based on our de novo review of the record, we agree with the district court's determination that the fact that Dermen "is facing the prospect of life in prison," *id*., his strong ties to Turkey and access to substantial assets there, his earlier plans to flee to Turkey and his demonstrated ability to do so, and Turkey's refusal to extradite to the United States, establish by a preponderance of the evidence that he continues to pose a significant flight risk.[1]

The district court also found that the government presented "an extensive array" of evidence that establishes clearly and convincingly that Dermen is a danger

---

[1] At oral argument before the district court, the defense argued that it is unlikely that Dermen would leave the United States if he were released because most of his immediate family live here and his daughter was expecting a child soon. Given the weight of the evidence regarding Dermen's ties to and assets in Turkey and his demonstrated ability to leave the country undetected, we find no error in the district court's failure to expressly reject these additional arguments in its order.

to the community. *Id.* at 2016. He challenges that finding, claiming that the weight and credibility of the evidence does not support it, that the court erred by not holding another hearing on dangerousness even though he did not request one, and that the court considered one document containing improper *ex parte* evidence. We need not address these arguments, however, because it is well established that the government can keep a defendant in custody solely to secure his presence at trial. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990) (recognizing that the Bail Reform Act "directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness *or* risk of flight" (emphasis added)); *Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty."); *see also United States v. Jackson*, 823 F.2d 4, 8 (2d Cir. 1987) ("Since we affirm [defendant's] continued detention on risk of flight grounds, we need not consider whether he may properly be detained as a danger to the community." (footnote omitted)).

### 2. Due Process Determination

We reject Dermen's argument that the district court erred by concluding that the length of his pretrial detention was not constitutionally excessive.

Other than the new evidence discussed above, an additional six months of detention, and four more trial continuances—all at Dermen's request—the due process analysis remains the same as in *Dermen I*. We set forth the applicable legal standards in that decision, 779 F. App'x at 506-07, and we need not repeat them here.

11

Examining the relevant factors, the district court concluded that Dermen will have been in custody for about 17 months at the start of trial, that the government was not responsible for the delays, and that, as discussed above, there is substantial evidence supporting the need for his continued detention.[2] The court acknowledged that 17 months "is a significant period of detention," but noted that "no Tenth Circuit case has held that a similar period of detention violates due process," and that similar and substantially longer periods of detention have been upheld against due process challenges, particularly where, as here, much of the delay was caused by the defense.[3] Aplt. App., Vol. 8 at 2020. We find no clear error in the district court's findings of historical fact, and we agree with its conclusion that the length of Dermen's detention has not exceeded constitutional limits, particularly given that trial is under way.

---

[2] The district court's analysis of the strength of the evidence supporting detention focused primarily on the flight-risk evidence, but the court noted that "the clear and convincing evidence" that Dermen is a danger to the community "reinforces the court's view that [he] must remain in pretrial detention pending his trial." Aplt. App., Vol. 8 at 2022. We need not address that finding because there is ample support for the court's due process determination without it.

[3] *Citing United States v. Hudak*, 77 F. App'x 489, 489-90 (10th Cir. 2003) (per curiam) (14-month detention did not violate due process); *United States v. Peters*, No. 94-2107, 1994 WL 325419, at *1 (10th Cir. July 7, 1994) (unpublished) (34-month detention did not violate due process where delays were attributable to defense motions); *United States v. Millan*, 4 F.3d 1038, 1044, 1049 (2d Cir. 1993) (31-month pretrial detention did not violate due process).

12

### C. Motions to Seal

Dermen filed motions for leave to file the district court's order and volumes six through eight of the appendix under seal, explaining that they contain highly sensitive information and that redaction in lieu of sealing is impracticable because the sensitive material is interwoven throughout the order and three appendix volumes. *See* 10th Cir. R. 25.6(B) (requiring moving party to file a redacted version of the materials sought to be sealed unless redaction is impracticable). The government did not object to the motions and, as noted above, the district court issued its order under seal and sealed the portions of its record that are now contained in the volumes Dermen asks us to seal. We provisionally granted the motion to seal the three appendix volumes subject to a final determination by the merits panel, and because the district court's order is contained in one of the sealed volumes, we denied as unnecessary the separate motion to seal the order. Having reviewed the motions, the district court order, and volumes six through eight of the appendix, we now make our provisional order granting the motion to file those volumes under seal permanent.

### Conclusion

The district court's decision is affirmed. The motion to seal volumes six through eight of the appendix is granted.

Entered for the Court
Per Curiam