**UNITED STATES of America, Appellee,**

v.

**Godofredo MARTIR,**
**Defendant-Appellant.**

**No. 788, Docket 86–1005.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1986.
Decided Feb. 3, 1986.

Robert Plautz, New York City, for defendant-appellant.

Cecilia L. Gardner, Brooklyn, Asst. U.S. Atty. for the Eastern District of New York (Raymond J. Dearie, U.S. Atty. for the Eastern District of New York, Jane Simkin

Smith, Asst. U.S. Atty., of Counsel), for appellee.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

The Bail Reform Act of 1984 creates a rebuttable presumption that a person accused of certain serious narcotics offenses will flee before trial. This case presents several important issues new to this circuit regarding the effect of the presumption and the type of showing needed to justify the detention of such a defendant who has come forward with material to rebut it. Godofredo Martir appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Constantino, J., that he be detained pending trial. Because we find that the government met its burden of proving that no combination of release conditions would reasonably assure Martir's presence at trial, we affirm the order of pretrial detention.

### I.

Godofredo Martir was indicted with several others on one count of conspiracy to distribute heroin and on three counts of distributing heroin within 1000 feet of a public school. 21 U.S.C. §§ 841(a)(1), 841(b)(1), 845a. At a hearing before Judge Constantino on December 2, 1985, the government moved under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., to have Martir detained pending trial, arguing that his indictment triggered the rebuttable presumption of 18 U.S.C. § 3142(e) that Martir would flee if not detained. The government indicated that Martir had been convicted in state court on weapons charges, and announced that it would prove at trial that Martir headed the heroin distribution network charged in the indictment. Martir proffered that he had established a perfect attendance record while at liberty on bail during his state weapons trial, and

claimed he had a legal defense to the sentence enhancement provisions of 21 U.S.C. § 845a. He pointed out that members of his family were present in the courtroom, and stated that they were ready to raise $5,000 bail on his behalf.

The district judge orally rejected Martir's arguments and indicated that bail would be denied. Two days later, Martir asked the judge to reconsider, noting that his codefendants had been released on bail, and that he had faced a seven-year sentence in the state court proceeding. The court denied bail and ordered Martir detained in a written memorandum dated December 10, 1985. This appeal followed, and it has been heard and considered on an expedited basis.

### II.

Section 3142 of the Bail Reform Act of 1984 (the Act), unlike prior law, expressly authorizes detention pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *United States v. Chimurenga,* 760 F.2d 400, 403 (2d Cir.1985). The drafters of the Act recognized that under prior law courts had exercised the authority to deny pretrial release to defendants in exceptional circumstances where financial conditions of release could not overcome the significant risks of a defendant's flight. See *United States v. Abrahams,* 575 F.2d 3 (1st Cir.), cert. denied, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); S.Rep. No. 225, 98th Cong., 1st Sess. 7 & n. 18, reprinted in 1984 U.S.Code Cong. & Ad.News at 3189–90 (Senate Report). Section 3142, insofar as it makes risk of flight a predicate for pretrial detention, codifies this preexisting practice. However, section 3142(e), which is reproduced in the margin, also created a new rebuttable presumption that no condition of release will prevent a defendant's flight or the safety of the community if there is probable cause to believe that the defendant has committed certain

narcotics and arms offenses.[1] Only the presumption of flight is involved in this appeal.

The parties do not dispute that Martir's indictment for the narcotics offenses charged created "probable cause" sufficient to trigger the § 3142(e) presumption of flight. See *United States v. Contreras*, 776 F.2d 51 (2d Cir.1985). Rather, they dispute whether the presumption was correctly applied, and whether the government's informal proffer was enough to sustain Martir's detention after he produced information tending to rebut the presumption. Martir argues that the district court misapplied the presumption by using it to shift the burden of persuasion to Martir on the question of flight. Alternatively, Martir contends, once he had come forward to rebut the presumption, the unsupported nature of the government's proffer concerning Martir's role in the charged enterprise made the proffer insufficient to carry the government's burden of proving that Martir should not be released on bail. Since these issues are important to administration of the Act, it is useful to set forth some general considerations regarding the effect of the flight presumption and the evidentiary burden it continues to leave on the government.

 First, it is clear that the flight presumption of section 3142(e) places on the defendant only the burden of coming forward with evidence to rebut it. The government retains the burden of persuasion. *Chimurenga*, supra, 760 F.2d at 405. However, it does not follow that the effect of the presumption disappears as soon as the defendant produces some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is "particularly high among those charged with major drug offenses." Senate Report at 20, reprinted at 1984 U.S.Code Cong. & Ad.News 3203. The concern underlying the presumption applies to the general class of defendants charged with one of the specified offenses—not merely to defendants who fail to produce rebuttal evidence. Were the presumption of flight to vanish upon *any* showing that a defendant was likely to appear, courts would be giving too little deference to Congress' findings regarding this class. We therefore adopt the "middle ground" position taken in *United States v. Jessup*, 757 F.2d 378, 382–84 (1st Cir.1985). A judicial officer conducting a detention hearing should, even after a defendant has come forward with rebuttal evidence, continue to give the presumption of flight some weight by keeping in mind that Congress has found that these offenders pose special risks of flight, and that "a strong probability arises" that no form of conditional release will be adequate to secure their appearance. See Senate Report at 19, reprinted in 1984 U.S.Code Cong. & Ad. News at 3202. The judge or magistrate thus should consider those legislative findings among the other factors to be weighed in deciding whether a defendant should be detained. *Jessup*, supra, 757 F.2d at 384.

Second, Congress clearly did not envisage that a formal evidentiary hearing would be needed to resolve competing claims under the flight presumption. While the Act is silent concerning how the

---

1. 18 U.S.C. § 3142(e) provides in relevant part:

 (e) *Detention.* If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial.

 * * * * *

 Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the ap-

pearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. § 955a), or an offense under section 924(c) of title 18 of the United States Code.

government is to proceed at a detention hearing, the thrust of the legislation is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials, *United States v. Delker,* 757 F.2d 1390, 1396 (3d Cir.1985). Section 3142(f), which is reproduced in the margin, provides that a defendant may present "information" by proffer, and that the rules of evidence governing admissibility of evidence at trial do not apply to the "presentation and consideration of information" at such hearings.[2] Congress explicitly left open what kinds of information would be a sufficient basis for release, choosing to leave the issue to the judgment of the courts on a case-by-case basis. Senate Report at 18–19, reprinted in 1984 U.S. Code Cong. & Ad.News at 3201–02.

In light of the Act's mandate for informality and the need for speed at a point where neither the defense nor the prosecution is likely to have marshalled all its proof, the government as well as the defendant should usually be able to proceed by some type of proffer where risk of flight is at issue. See, e.g., *United States v. Colombo,* 777 F.2d 96 (2d Cir.1985) (reversing district court and ordering defendant detained on basis of proffer). Moreover, Congress was quite aware that the government might present information through proffers under the Act. Such a practice was well-established under the District of Columbia bail statute, D.C.Code § 23–1322(c)(4)–(c)(5), which served as Congress' model for the Act's procedural framework. Senate Report at 22, reprinted in 1984 U.S.Code Cong. & Ad.News 3205; see *United States v. Edwards,* 430 A.2d 1321, 1334, 1338 (D.C.App.1981) (in banc) (government may proceed directly or by proffer under D.C. statute), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). See also *United States v. Acevedo-Ramos,* 755 F.2d 203, 208 (1st Cir. 1985). Indeed, Martir concedes that proceeding by way of proffer at a detention hearing is proper.

■■ Third, while the Act hence gives courts considerable discretion regarding methods of presenting information about the risk of flight, the exercise of that discretion should reflect an awareness of the high stakes involved. As the Third Circuit observed while discussing the trial court's power to limit cross-examination "to prevent a pretrial hearing from becoming a full-blown trial," such power should always be exercised "with the recognition that a pretrial detention hearing may restrict for a significant time the liberty of a presumably innocent person." *Delker,* supra, 757 F.2d at 1398. The judge or magistrate accordingly retains the responsibility for assessing the reliability and accuracy of the government's information, whether presented by proffer or by direct proof. Of course, a detention hearing is not to serve as a mini-trial, as discussed above, or as a discovery tool for the defendant. See *Contreras,* supra, 776 F.2d at 55. Accordingly, a government proffer need not always spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use. Cf. *Acevedo-Ramos,* supra, 755 F.2d at 205, 208–09 (affirming detention order entered

---

2. 18 U.S.C. § 3142(f) provides in relevant part:

(f) *Detention hearing.* The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community ...

At the hearing, the person has the right to be represented by counsel, and, if he is financially unable to obtain adequate representation, to have counsel appointed for him. The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing.

after government refused to provide names of witnesses).

■ Martir does not so much dispute these principles as contend that they were misapplied. At the outset, he suggests that we should independently determine whether a conditional release would reasonably assure his presence at trial. See, e.g., *Delker*, supra, 757 F.2d at 1399–1400. But we are precluded from adopting such a standard of review. It is established in this circuit that we should reverse only if the district court's finding on this issue was clearly erroneous. See *Colombo*, supra, 777 F.2d at 100; *Chimurenga*, supra, 760 F.2d at 405.

■ There is no question that the presumption of flight attached under section 3142(e) when Martir was indicted, and that it imposed on Martir a burden of production which he met by coming forward with information concerning his record of attendance in the state criminal proceeding, family ties and other matters. He claims, however, that the district court improperly shifted to him the burden of persuasion, as well as of production, on the risk of flight issue. See *Contreras*, supra, 776 F.2d at 53 n. 1. The court's brief memorandum order denying bail states that "the court is unconvinced that defendant's attendance in state court rebuts the [section 3142(e) ] presumption." While this language might be consistent with the notion that the judge improperly put the burden of persuasion on Martir, or at least applied the presumption in a manner so unclear as to require a remand, see *United States v. Hazime*, 762 F.2d 34 (6th Cir.1985), for the reasons given below we do not believe that the judge misapplied the law.

As already noted, the presumption of flight does not vanish from a case when a defendant comes forward with material to contradict it. Here, even after Martir had made his showing the judge was free to consider the congressional finding that serious drug offenders pose unusual risks of flight. Moreover, after reading the order in the context of all the proceedings, it is clear that the judge concluded that the factors indicating that Martir would flee, including the congressional finding that defendants of this type are likely to do so, simply outweighed the favorable information stressed by Martir. At his detention hearing, Martir argued that his state court trial attendance record on bail showed he was a good candidate for bail. The judge immediately noted, however, that the weapons charges Martir had faced there were much less serious than the narcotics offenses charged in the federal indictment. Similarly, the judge discounted the presence of Martir's family in the courtroom and the family's willingness to post a $5,000 bond by noting that it was common for family members to show support for each other. From the indictment, it was clear that Martir faced a very lengthy potential sentence. From the government's proffer, which Martir did not oppose, it also appeared that the government expected to prove that Martir was the key person in a narcotics distribution network. Under the circumstances, we believe that the judge found Martir to pose a great risk of flight, particularly in light of the congressional findings, a risk which carried far more weight than his attempts to show his stability, reliability and roots in the community. While the judge should have stated the basis of the order of detention more clearly and should have made more detailed findings in light of the major liberty interests at stake, not to mention our duty to exercise meaningful review of detention decisions, on this record we find no reversible error in this regard.

■ Martir claims alternatively that even if the judge correctly understood and applied the flight presumption, the quality and quantity of information produced by the government was not enough to justify detaining him. We disagree. For detention to be proper, the government had to prove by a preponderance of the evidence that no conditions of release would reasonably assure Martir's attendance at trial. *Chimurenga*, supra, 760 F.2d at 405. The indictment charged several defendants with participation in a heroin distribution sys-

tem. The government stated to Judge Costantino that it would prove at trial that Martir was the head of the network, employed its members, and owned the retail establishment where the network made its sales, several of which were made directly to undercover agents. Martir attacks this proffer as flimsy and conclusory, because it gave no clue concerning how the government was going to prove these claims at trial. We note that the government, in sharp contrast to what occurred in such cases as *Chimurenga* and *Colombo*, referred to no independent evidence, such as tapes, documents, or photographs, of the crimes charged, nor did it furnish testimony or an affidavit to describe or summarize, albeit in hearsay form, in even moderate detail, the forthcoming trial testimony of its witnesses. The government simply stated in the most general and conclusory terms what it hoped to prove.

But Martir did not challenge the proffer in any way. In the absence of such an attack, we cannot say that Judge Costantino erred in failing to demand further elaboration from the government. In the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved. See *Delker*, supra, 757 F.2d at 1396. As noted in *Acevedo-Ramos*, supra, 755 F.2d at 207, when a proffer is made,

> the magistrate or judge possesses adequate power to reconcile the competing demands of speed and reliability by selectively insisting upon the production of the underlying evidence or evidentiary sources *where their accuracy is in question*. (emphasis added).

Martir's failure to question the reliability of the government's proffer hence tends to justify the acceptance of the proffer as accurate. See id. at 208–09.

 Under the circumstances, we find that the government met its burden of proof by the preponderance of the evidence. Martir was charged with serious

offenses whose maximum combined terms of 105 years imprisonment created potent incentives to flee. The government's informal proffer that he was the mastermind of a narcotics scheme tended to show that Martir not only had reason to expect a greater sentence than his codefendants, but also had greater opportunities to flee due to greater wealth and better contacts. When compared to these reasons for flight and means to do so, similar to those noted by Congress concerning serious narcotics offenders as a class, see Senate Report at 19–20, reprinted in 1984 U.S.Code Cong. & Ad.News at 3202–03, Martir's attendance record in state court for an offense carrying a seven-year term and the willingness of his family to stake him to $5,000 carried very little weight. The release on bail of Martir's codefendants, who were not charged as linchpins of the scheme, had little bearing on Martir's propensity to flee. In addition, the only challenge raised by Martir to the strength of the government's case was a partial legal defense that has already been rejected by this court. See *United States v. Jones*, 779 F.2d 121 (2d Cir. 1985) (fact that alleged distribution took place at night in a location that was not frequented by children does not affect applicability of schoolyard statute); see also *United States v. Falu*, 776 F.2d 46 (2d Cir.1985) (defendant need not have knowledge of proximity of school to be convicted under schoolyard statute). Accordingly, while this case is a close one, giving the deference to the district court that the clearly erroneous rule embodies, we cannot say that Judge Costantino committed reversible error in concluding that Martir should be denied bail. We do not address whether the government's showing would have been sufficient if Martir's danger to the community were the basis for detention, since the government must prove such danger by the more difficult standard of "clear and convincing" evidence. 18 U.S.C. § 3142(f); *Chimurenga*, supra, 760 F.2d at 403.

The order of the district court is affirmed.