**UNITED STATES of America, Plaintiff,**

v.

**Donte HAMMOND, Defendant.**

**No. CR. AMD–99–073.**

United States District Court, D. Maryland.

March 25, 1999.

---

*MEMORANDUM AND ORDER*

BREDAR, United States Magistrate Judge.

This matter is before the Court on the government's motion to detain the defendant without bail pending trial, pursuant to 18 U.S.C. § 3142. Pursuant to a grand jury indictment returned in this District, the defendant is alleged to have possessed a firearm after sustaining a conviction for a felony offense, in violation of 18 U.S.C. § 922(g) and 924. The government con-

tends, under 18 U.S.C. § 3142(f)(1)(D) and (f)(2)(A), that the defendant is both a flight risk and that he poses a danger to the community, and that there are no conditions of release that can be fashioned that will adequately mitigate these concerns. 18 U.S.C. § 3142(e). The government agrees that it bears the burden of proof in this proceeding, and that no presumptions arise in its favor on the detention issue. Presently under consideration by the Court is the announcement by the government that it will proceed solely by proffer as it attempts to meet its burden *despite* the Court's request that it present live testimony in support of its motion.

■ It is the Court and not the government that determines whether proceeding by proffer is acceptable in a given detention hearing. While in the majority of detention matters heard by this Court proffers in lieu of live testimony are appropriate, this is not such a case.

## I.

The pretrial services agency of this Court has investigated the defendant's background and uncovered certain key information. Mr. Hammond is 22 and a lifelong resident of Baltimore. There is no record of him ever having been employed. He claims to live with his girlfriend, but she contests that claim. Mr. Hammond has a criminal history. In April 1994, he was sentenced to concurrent terms of seven years in prison (six years suspended) on separate drug distribution counts. In March 1996, he was sentenced to fifteen years in prison (eleven years and six months suspended), again on a drug distribution charge. He was arrested by Baltimore City police in January 1999 and this case springs from that arrest.

Mr. Hammond came before this Court for a detention hearing on March 17, 1999. At that hearing, the government, although given the opportunity, presented no evidence in support of its motion to detain. Instead, it directed the Court's attention to the grand jury indictment and to the Pretrial Services report. In addition, the Assistant U.S. Attorney representing the government "proffered" what she believed would be revealed if the government elected to present evidence in the proceeding.

According to the proffer, two Baltimore City police officers, if present, would testify that on January 16, 1999, they approached Mr. Hammond in the 2700 block of Spelman Avenue in Baltimore's Southern Police District with the intention of arresting him. The officers considered Mr. Hammond to be "loitering." The officers would testify further that Mr. Hammond ran away and, with them in pursuit, he removed a handgun from his waistband area and dropped it to the ground before being apprehended.

Counsel representing Mr. Hammond at the detention hearing suggested to the Court that a case of this nature—a so-called "dropsy" case in which there is no independent corroboration and in which the dropped weapon is the sole basis for the case before the Court—is one in which the government should proceed with live evidence rather than by proffer because of the inherent unreliability of the factual predicate and the necessity of testing such facts in the crucible of cross-examination. The defendant's lawyer recognized the dark shadow which the charge, if substantiated, cast across the likelihood of his client's pretrial release from the standpoint of dangerousness to the community and suggested that this consideration, in fact, amplified the need for testimony as opposed to proffer.

At the conclusion of the hearing on March 17, the Court advised the parties that it was troubled by the information presented to it. The Court noted the defendant's criminal history and the seriousness of the charge now leveled against him. The Court also noted, however, its obligation under 18 U.S.C. § 3142(g)(2) to consider "the weight of the evidence against the person." In this matter the evidence of guilt goes not just to the ulti-

mate chance of conviction but is also the key evidence on the dangerousness issue. Noting questions about the "weight of the evidence," the Court invited the government to present the live testimony of the police officer or officers who allegedly witnessed the offense giving rise to the charge, so that the Court could assess and reach conclusions about the credibility of the uncorroborated eyewitness testimony proffered by the U.S. Attorney and thereby reach a more informed conclusion as to the "weight of the evidence." Upon the government's representation that it would accept this invitation and present the live testimony of the officer(s) if given the opportunity, the Court did not then order the defendant released upon failure of the government's proof, but instead continued the detention hearing until March 18, 1999, at which time the government would be permitted to reopen their case.

At the hearing on March 18, the government changed course and declined to present live testimony of police officers. Instead, the government presented a photocopy of a police officer's statement in support of a charging document apparently filed in state Court in relation to the incident that later gave rise to the pending federal charge. When the Court inquired as to the government's intention with respect to the presentation of live testimony, government counsel provided the troubling explanation that supervisory staff in the United States Attorney's Office had decided that the presentation of such evidence was unnecessary because the information supplied to the Court, with particular reference to the additional written statement of the police officer, was in their view sufficient to compel detention in the case.

## II.

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.,* does not expressly authorize the government to proceed by proffer at detention hearings. Such authority is granted to defendants. 18 U.S.C. § 3142(f).

Nonetheless, a number of Federal Circuits—notably, not the Fourth—have held that evidence proffers of the sort presented by the government in this case may sometimes be adequate for a detention order. *See, United States v. Acevedo–Ramos,* 755 F.2d 203, 208 (1st Cir.1985); *United States v. Martir,* 782 F.2d 1141, 1145 (2d Cir.1986); *United States v. Delker,* 757 F.2d 1390, 1397 (3d Cir.1985); *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985); *United States v. Portes,* 786 F.2d 758, 767 (7th Cir.1985); *United States v. Winsor,* 785 F.2d 755, 756 (9th Cir.1986); *United States v. Gaviria,* 828 F.2d 667, 669 (11th Cir.1987). Indeed, this Court routinely enters orders of detention on government proffers at detention hearings, sometimes over the objection of defendants. Most of the above-cited authorities recognize that the procedural requirements for detention hearings under 18 U.S.C. § 3142 reflect those in the District of Columbia statute upon which it was modeled and which were found to meet constitutional due process standards in *United States v. Edwards,* 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). *Edwards,* in turn, contains the following language:

> The legislative history of the statute confirms Congress' intent that the information upon which the judicial officer makes his finding need not be sworn testimony, and that the hearing is not designed to afford defendants a discovery device. Thus in providing that the finding of substantial probability is to be based on information presented "by proffer or otherwise," the House Report anticipates
>
> > that, as is the present practice under the Bail Reform Act, ... the use of sworn testimony will be the exception and not the rule.... (B)ail hearings under the Bail Reform Act, which frequently result in detention of the accused, proceed primarily by way of proffers. They are not formal trials

requiring strict adherence to technical rules of evidence. *If the Court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony. But the discretion should be left to the Court without imposing on it the burden of limiting admissibility to that it would permit a jury to hear. (H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 182, 184 (1970)(emphasis added).)*

*Accordingly, hearsay evidence may be presented, although the Court may require direct testimony if dissatisfied with a proffer.*

*Id.,* at 1334 (emphasis added).

■ In short, the case law supporting detention upon government proffers in no way requires a judicial officer to accept or accredit proffered evidence, nor does that case law assume that proffers in lieu of live testimony are appropriate in every case. The case law certainly does not limit, and in fact supports, the discretion of the reviewing judicial officer to require the presentation of evidence. Of necessity, the propriety of a proffer as a basis for detention must be assessed on a case-by-case basis. When the government is able to proffer evidence that reflects ample and substantial corroboration for its contention that a defendant has committed an offense and is dangerous or a flight risk, efficiency and the need to conserve scarce judicial resources justify accepting that proffer in lieu of live testimony; and such proffers that are reflective of weighty and broad evidence of guilt, when considered with other information such as criminal history and lack of ties to the community, can be entirely proper bases for orders of detention. On the other hand, when the evidence proffered is the uncorroborated statement(s) of one or two police officers who allegedly observed a single act committed by the defendant, and when there is no other evidence proffered in support of the eyewitness testimony, the Court should consider the proffer with great care and accord it limited weight. Before entering any order of detention in such a case, the judicial officer should require the government to present live testimony able to withstand confrontation, long- and well-recognized as the "greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)(quoting 5 J. Wigmore, Evidence § 1367 (3d ed.1940)).

### III.

■ In this case, the government has elected to proceed by proffer, after being given the opportunity to supplement the record with live testimony when their initial presentation fell short in the Court's view. The proffered evidence is weak because it is uncorroborated.[1] The weight it deserves is solely a function of the credibility one ascribes to the officers(s)/witness(es), and it is impossible for the Court to make that · credibility determination without the officer(s) personally present and subject to cross-examination. The Court has concluded, in the exercise of its discretion, that its responsibility under the

---

1. The government argues vigorously that the defendant's demand that the Court hear more than a proffer is based upon an inherent and inappropriate suspicion of police testimony. The government further suggests that it will be required to present more than a proffer only if the Court indulges a "pre-existing anti-police sentiment." Government's Brief at 11. The government misunderstands its own duty as well as the role of the Court. As noted, the problem with the evidence is not its source but rather its lack of corroboration. The government has no presumption in its favor in this case and must carry its burden. The Court must see that it does so or order the defendant released. The government is quite right in its contention that it would be improper to suspect the testimony of a witness because he is a police officer. It would be similarly improper for the Court to accept unquestioningly the testimony of a witness *because* he is a police officer. In this case, the government goes too far when it impliedly suggests that the Court must accept unquestioningly a *proffer* of uncorroborated police testimony.

Bail Reform Act to consider the weight of the evidence and to put the government to its burden on dangerousness can only be met in this case by hearing testimony from one or both of the arresting officers. Therefore, the detention hearing in this case shall continue on Friday, March 26, at 4:00 p.m. At that time the government is directed to produce one or both of the arresting officers and to then present their testimony as to the facts surrounding the arrest of the defendant. The officer(s) will then be subject to cross-examination by the defendant's attorney, in the normal fashion. Oral argument on the government's motion is no longer deemed necessary by the Court, and the hearing scheduled for March 25 at 10:00 a.m. is vacated. So ORDERED.