**UNITED STATES of America,
Plaintiff,**

v.

**Carlos TORRES, Defendant.**

**No. 05–CR–6062L.**

United States District Court,
W.D. New York.

June 20, 2006.

Everardo A. Rodriguez, U.S. Attorney's Office, Rochester, NY, for Plaintiff.

Herbert J. Lewis, Rochester, NY, for Defendant.

### DECISION & ORDER

PAYSON, United States Magistrate Judge.

### Preliminary Statement

Currently pending before this Court is defendant Carlos Torres' motion for reconsideration and vacatur of this Court's Order dated May 4, 2005 detaining him pending trial. (Docket # 95). Following an initial detention hearing that was held over the course of two days in late April and early May 2005, this Court granted the government's motion to detain Torres on the grounds that he was a danger to the community and denied its motion on the grounds of risk of flight. (Docket # 10). Torres appealed that determination to United States District Judge David G. Larimer, who affirmed this Court's detention order. (Docket # 63). Judge Larimer also noted his disagreement with this Court's denial of the government's motion based on risk of flight, stating, "based on the substantial quantity of drugs found, the strength of the Government's case and the fact that Torres is facing a minimum 15–year sentence, there would be a basis to detain based on risk of flight, in spite of Torres' lack of prior record and significant ties to the community." (Docket # 63 at 1–2).

Torres now seeks reconsideration of the detention order and release on conditions, arguing that one of the cooperating witnesses (co-defendant Frederick Rolle) upon whom the Court relied in detaining Torres has been discredited, as the government itself admits. (Docket ## 98, 119). Discounting that witness, Torres maintains, renders the remaining evidence proffered by the government inadequate to demonstrate that he constitutes a danger to the community. Torres does not address the issue of risk of flight, the alternate basis on which Judge Larimer affirmed the original detention. Because I find that Torres should continue to be detained on grounds of dangerousness, I decline to reach the question of risk of flight.

This Court granted Torres' motion to reopen the detention hearing under 18 U.S.C. § 3142(f).[1] (Docket # 101). The

---

1. 18 U.S.C. § 3142(f) provides that the detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

reopened detention hearing was held on February 23, 2006 and, after a request for an adjournment by Torres, continued on March 28, 2006. (Docket ## 104, 109, 115). Both parties filed post-hearing submissions (Docket ## 119, 122), which this Court has reviewed and considered.

The following constitutes this Court's Decision and Order on Torres' motion for reconsideration and vacatur of its prior detention order.

### Procedural History

Torres was arrested on April 23, 2005, and charged in a criminal complaint sworn to that same day. (Docket # 1). Several days later, a grand jury returned an indictment against him charging him and three co-defendants with conspiring to possess with intent to distribute, and to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Docket # 7). The Indictment also charges Torres with possessing a firearm in furtherance of that offense, in violation of 18 U.S.C. § 924(c). Both offenses are alleged to have occurred on or about April 20, 2005. (Docket # 7).

The case against Torres and co-defendant Onel Medina–Sosa is now trial-ready.[2] (Docket # 128). Following his receipt of discovery from the government, Torres filed various pretrial motions concerning which this Court held a suppression hearing and a *Franks* hearing. In a joint Decision and Order, and Report and Recommendation, dated March 3, 2006, this Court recommended denial of Torres' motions. (Docket # 108). That opinion contains an extensive recitation of the events preceding Torres' arrest, and familiarity with that opinion is assumed. In an order dated May 30, 2006, Judge Larimer affirmed the Decision and Order and adopted the Report and Recommendation on Torres' pretrial motions. (Docket # 126).

### The Original Detention Decision

At Torres' initial appearance on the Complaint, the government moved to detain him pending trial under 18 U.S.C. § 3142(f)(1)(A) because he has been charged with a crime of violence (the 18 U.S.C. § 924(c) charge); 18 U.S.C. § 3142(f)(1)(B) because he has been charged with an offense for which the maximum penalty is life imprisonment; 18 U.S.C. § 3142(f)(1)(C) because he has been charged with a narcotics offense for which the maximum penalty is a term of imprisonment of ten years or more; and, 18 U.S.C. § 3142(f)(2)(A) because defendant poses a serious risk of flight. According to the government, there exists no combination of conditions that would reasonably assure the safety of the community and the appearance of the defendant at subsequent court proceedings.

Following the detention hearing, I issued an oral decision from the bench granting the government's motion on the grounds of danger to the community. (See Docket # 98, Exhibit ("Ex.") A). In reaching that decision, I determined that the government had established by clear and convincing evidence that no conditions exist to adequately assure against the danger to the community, namely, the risk of narcotics trafficking, posed by Torres' release. (Docket # 98, Ex. A at 7). *See United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985) (government bears burden of establishing danger to community by clear and convincing evidence). I explained that while there were certain

---

**2.** On the government's motion, the charges against co-defendant Jessie McIntyre have been dismissed. (Docket # 127). Co-defendant Rolle has pleaded guilty and is awaiting sentence. (Docket # 125).

factors under 18 U.S.C. § 3142(g) that militated against Torres' detention,[3] the balance of all the factors under 18 U.S.C. § 3142(g) compelled the conclusion that he should be detained. (Docket # 98, Ex. A at 8–19). As explained more fully in the transcript of the decision, I noted my reliance on the following factors: (1) the nature of the charges, namely, that Torres is charged with both a crime of violence (18 U.S.C. § 924(c)) and a narcotics offense for which a maximum term of imprisonment of ten years or more is prescribed (21 U.S.C. § 846), see 18 U.S.C. § 3142(g)(1); (2) the strength of the government's case against Torres, which I characterized as "very strong" based upon the government's proffer, see 18 U.S.C. § 3142(g)(2); and (3) the rebuttable presumption applicable to cases such as this in which probable cause exists to believe the defendant has committed a violation of 18 U.S.C. § 924(c) or a narcotics offense with a maximum term of imprisonment of ten years or more (here of course, Torres has been charged with both types of offenses),[4] see 18 U.S.C. § 3142(e). (Docket # 98, Ex. A at 12–19).

At the time I issued the decision, I explained the bases on which I concluded that the government's case against Torres appeared strong. (See Docket # 98, Ex. A at 12). First, I noted that the government had been provided with information by a confidential informant that Torres was a multi-kilogram dealer of cocaine; the informant further advised that he had been in the defendant's home and had observed large quantities of cocaine and substantial amounts of currency, as well as a German Shepherd dog. According to the informant, Torres was expecting a shipment of cocaine sometime the week of

April 20, 2005 from an Hispanic male in a black Ford Bronco. (Id. at 13). The government proffered that the informant's information had been corroborated by subsequent events. On April 20, 2005, law enforcement agents observed a black Ford Bronco arrive at Torres' residence and park in the driveway. The car was being driving by a Dominican male. The car was searched by agents, and twelve kilograms of cocaine were discovered inside a secret compartment in the car. (Id. at 14).

In explaining my decision, I also noted that co-defendant Rolle had implicated Torres, along with himself, following their arrests on April 20, 2005. According to the government, Rolle had stated that he had gone to the house that law enforcement identified as Torres' residence on previous occasions to pick up substantial quantities of cocaine and had delivered cash to that residence to pay for cocaine. (Id. at 13–14).

In addition to the information provided by the informant and Rolle, I also relied upon the fact that incriminating evidence was seized from Torres' house pursuant to a search warrant that had been executed on April 20, 2005. Specifically, the government proffered that $3,300 in cash had been recovered, as well as a loaded shotgun (which was found under Torres' bed) and a bulletproof vest. (Id. at 16–18). (At the time of the search, a German Shepherd was present.) With respect to the $3,300 in cash, I noted the discrepancy between Torres' explanation proffered during the hearing—that the funds were several months' worth of rent monies that he had collected on behalf of a landlord—and his failure to disclose such alleged income-

---

3. In my view, those factors were the defendant's employment history, family and community ties and lack of prior criminal record. (Docket # 98, Ex. A at 8–10).

4. By the time of my detention decision, an indictment had been returned, thus satisfying the probable cause requirement under 18 U.S.C. § 3142(e).

producing activities during his interview with Pretrial Services Agency. (*Id.* at 18). Finally, I cited the evidence of unexplained wealth, namely, Torres' ownership or lease of a 2005 Hummer vehicle; at the time, Torres was on disability leave from his employment as a maintenance worker with the County of Monroe at an hourly rate of $22. (*Id.* at 18).

### The Instant Motion for Reconsideration

Months following the decision, by letter dated February 6, 2006, the government advised defense counsel that defendant Rolle, who had been cooperating in the matter, took and failed a lie detector test. As a result, the government represented that it would not use Rolle as a cooperating witness. Rolle has since pleaded guilty pursuant to a plea agreement that does not contain a cooperation provision. (Docket # 124).

Based upon the developments described in the government's letter, Torres moved to reopen the detention hearing. He argued that this Court's reliance on Frederick Rolle's statements had proved misplaced in view of the fact that Rolle subsequently failed a lie detector test pertaining to the truthfulness of his post-arrest statement on April 20, 2005. Torres further maintained that in the absence of Rolle, the government's evidence was too weak to justify detention. Although it did not oppose reopening the hearing, the government contended that Torres' detention was warranted even if Rolle's statements were to be completely

discounted. I agree with the government.

As noted above, this Court granted Torres' motion to reopen the hearing, and the hearing was continued over the course of two days in late February and March 2006. During the hearing, the government proceeded by proffer and was permitted to offer into evidence a transcription of testimony of Sergeant John Henderson and Officer Philip Sindoni elicited during the suppression hearing held in connection with Medina–Sosa's pretrial motions. Torres was permitted to call those witnesses during the reopened hearing and cross-examine them. (Transcript of Reopened Detention Hearing, March 28, 2006) ("Tr.").[5]

Having heard and reviewed the proffers and defense counsel's examination of the witnesses called, it is still my view that no conditions exist to adequately assure against the danger to the community posed by defendant's release. Even if Rolle's post-arrest statement is taken entirely out of the mix of evidence proffered by the government, the case against Torres remains strong in my view. The confidential informant's veracity has not been discredited; indeed, much of the information he provided about Torres' alleged drug dealing was corroborated in significant respects by subsequent events. As previously explained, he advised Officer Sindoni that Torres was expecting a large shipment of cocaine from an Hispanic male in a black Ford Bronco.[6] Sindoni testified

---

**5.** He also called a witness to establish that he was not the owner of a karate business on the corner of East Main Street and North Goodman Street. The informant had identified Torres as the owner of a karate business on North Goodman Street. (Tr. 14). Testimony from the actual owner established that Torres' children attended the school, Torres sometimes assisted with instruction of the younger students and Torres' car had a decal advertising the school. (Tr. 61–62).

**6.** At the initial detention hearing, I noted that the informant had advised that the shipment was expected during the week of April 20th. During the reopened hearing, counsel for Torres established that sometime in April the informant had advised that the shipment was expected in the "next couple [of] weeks."

that on one occasion prior to April 20, 2005, he had observed a black Ford Bronco parked at Torres' house.[7] (Tr. 22–34). On April 20, 2005, law enforcement officers again observed a black Ford Bronco parked in Torres' driveway, and a Dominican male (co-defendant Medina–Sosa) was identified as the driver. When agents searched the Bronco, they discovered fourteen kilograms of cocaine hidden in a secret compartment inside the car.

The informant also told Officer Sindoni that he had been in Torres' house and had seen cocaine, kilogram wrappers and substantial quantities of currency (Tr. 13); he had also identified the presence of a German Shepherd dog in the home. Indeed, when the agents executed the search warrant for Torres' home on April 20, 2005, they noted that a German Shepherd was present. In addition, the evidence seized during the execution of the warrant at Torres' house was consistent with the informant's information that Torres was a narcotics trafficker: found at the time were a loaded shotgun under Torres' bed, a bulletproof vest and thousands of dollars in cash.

In sum, I continue to believe that Torres' detention is warranted by the nature of the charges against him, the strength of the government's evidence against him and the rebuttable presumption in favor of detention that applies by virtue of 18 U.S.C. § 3142(e). *See United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986) ("[a] judicial officer conducting a detention hearing should, even after a defendant has

come forward with rebuttal evidence, continue to give the presumption … some weight"). I find that the government has met its burden of establishing by clear and convincing evidence that no conditions, including the relatively stringent conditions proposed by Torres in his post-hearing submission, are adequate to assure against the danger to the community posed by Torres' release.

### *Conclusion*

For the foregoing reasons, it is the Order of this Court that Torres' motion for reconsideration and vacatur of this Court's May 4, 2005 Order detaining Torres pending trial (**Docket # 98**) is **DENIED**.

**IT IS SO ORDERED.**

---

(Tr. 21–22). This distinction does not alter my view that the informant's information was corroborated in significant respects.

7. Defense counsel devoted much attention to attempting to establish that it was raining at the time Sindoni observed the Bronco parked outside Torres' residence on April 7, 2005, and that Sindoni could identify the driver

only as "a medium complected male." (Tr. 38). For purposes of evaluating the credibility of the informant, the fact that the driver, who the informant had said would be Hispanic, was in fact Dominican is important; whether he was identified as Dominican before or after his arrest on April 20, 2005 is not.