**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4257

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

RUSSELL RICHARDSON VANE, IV, a/k/a Duke Russ Hampel, a/k/a Duke,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:24−cr−00101−AJT−1)

Argued:  July 9, 2024                    Decided:  September 13, 2024

Before DIAZ, Chief Judge, and NIEMEYER and RUSHING, Circuit Judges.

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion in which Judge Niemeyer and Judge Rushing joined.

**ARGUED:**  Yancey Ellis, CARMICHAEL ELLIS & BROCK, PLLC, Alexandria, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Robert M. Hansen, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Danya E. Atiyeh, Assistant United States Attorney, Amanda St. Cyr, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DIAZ, Chief Judge:

In April 2024, law enforcement arrested Russell Richardson Vane, IV, and charged him with attempted production of a biological agent or toxin, in violation of 18 U.S.C. § 175(a). A magistrate judge granted the government's motion that Vane be detained pending trial. The district court affirmed the magistrate judge's order. In rendering their decisions, the magistrate judge and district court relied in part on evidence proffered by the government in a detention hearing held under the Bail Reform Act, 18 U.S.C. § 3142(f).

Vane challenges the district court's denial of his motion to revoke the magistrate judge's order of pretrial detention, arguing that § 3142(f) allows only the defendant, and not the government, to introduce information by proffer. Thus, Vane contends that the district court erred in using such evidence to justify Vane's continued detention. The government, meanwhile, counters that this court—along with every other circuit court to consider the issue—has long allowed the government to offer evidentiary proffers during detention proceedings.

We heard oral argument from the parties on this question and, shortly after, issued a brief order affirming the district court's decision.[1] We now explain why.

---

[1] Since we issued our order, Vane pleaded guilty to possession of ricin and now moves to voluntarily dismiss this appeal as moot. For the reasons provided below, we deny that motion.

I.

In support of the government's motion for pretrial detention, the FBI submitted a criminal complaint charging Vane with attempting to produce a biological agent or toxin (specifically, ricin), as well as a probable cause affidavit.  We recite the facts according to that affidavit.

A.

Vane previously belonged to the Virginia Kekoas, "a pro-gun prepper militia based in Eastern Virginia."  App. 8 ¶ 6.  In early April 2024, "the FBI received multiple tips from both online sources and confidential human sources that a YouTube channel called 'News2Share' [had] posted a video titled 'Virginia Kekoas militia ousts member they believe may have been entrapping them over explosives.'"  App. 8 ¶ 6.  In the video, members of the Kekoas showed screenshots and documents that the ousted member had allegedly provided related to the "develop[ment] [of] homemade explosives."  App. 8 ¶ 6. The ousted member was Vane.

During his time with the Kekoas, Vane—whom the group knew as "Duke"— "claimed that he worked for the Intelligence Community,"[2] and queried whether several Kekoas members were "interested in information on how to build homemade explosives." App. 9 ¶ 10.  He also handed a Kekoas member "a manila envelope containing unclassified documents from one government agency and maps of government facilities relating to

_____

[2] Vane "has worked for the government for a decade as a data engineer" and is also a veteran.  Appellant's Br. at 2.

3

another government agency." App. 9–10 ¶ 10. These documents contained "precursor reports for cellulose and nitrocellulose, discussed ways to obtain the precursors, and explained their applications in the creation of explosive material."[3] App. 10 ¶ 10.

Vane, on another occasion, asked that Kekoas members "obtain hydrogen peroxide," which "can be used as a precursor chemical to easily create homemade explosives." App. 10 ¶ 12; *see also* App. 11 ¶ 12 ("The least you could have done is let the squad collect some low concentration H2O2 for me. The other parts I can source without trouble.").

Vane encouraged the Kekoas "to explore the use of explosives in order to set traps 'when the tanks come.'" App. 10 ¶ 12. And Vane admitted in a recorded chat to "passing 'the . . . unclassified homemade explosives answer to Cellulose and Black powder and a map'" to Kekoas leadership. App. 11 ¶ 13. These documents had, in fact, been "accessed as early as February 12, 2024, and removed from a secure government facility," before Vane "disseminated [them] to the militia on or about March 9, 2024." App. 12 ¶ 15.

Soon after this "escalating sequence of unusual behavior," App. 8 ¶ 6, the Kekoas removed Vane from its ranks, suspecting that he was a bad actor "plotting an entrapment attempt against the group, or worse." App. 8 ¶ 6. The group then released the YouTube video before voluntarily meeting with FBI investigators two days later. App. 11 ¶ 14. That

---

[3] A precursor chemical is a substance that can be used "in the production of explosives by either mixing or blending with other substances." *Explosive Precursor Chemicals*, Nat'l Inst. of Standards & Tech. (June 12, 2023), https://www.nist.gov/glossary-term/23211 [https://perma.cc/Y37G-YZVB].

same day, Vane "filed a petition in Fairfax County Circuit Court to legally change his name to 'Duke Russ Hampel.'"  App. 8 ¶ 5.

The FBI obtained a warrant and searched Vane's home.  In Vane's laundry room, agents "discovered a gallon-size Ziplock bag containing castor beans," App. 12 ¶ 16, and, in a box next to it, "a handwritten recipe for extracting ricin toxin from castor beans," App. 13 ¶ 17.  The FBI affiant knew that ricin, "naturally present in castor beans," is "highly toxic, and can be fatal[] if ingested, inhaled, or injected."  App. 13 ¶ 17.  The affiant also knew that "it is possible to isolate the ricin toxin from the castor beans, a process that . . . can be accomplished in makeshift household laboratories."  App. 13 ¶ 17.

Also in the box was "laboratory equipment, including beakers, a graduated cylinder, funnels, and a rack with test tubes, along with cleaning rags."  App. 13 ¶ 18.  Some of the test tubes contained a "powdery whitish material," which "appear[ed] to be consistent with the byproducts of ricin production."  App. 13 ¶ 18.  "In a second box on the same shelf, agents found a laboratory-style hotplate stirrer," which could be used "in ricin production."  App. 13 ¶ 18.  And nearby, agents found "a set of fine mesh strainers," App. 13 ¶ 18, and "a bottle of pH test strips," App. 14 ¶ 18, both of which the handwritten recipe mentioned as part of the "[ricin] manufacturing process."  App. 13–14 ¶ 18.

After finding and seizing these materials,[4] the agents arrested Vane.

---

[4] Law enforcement obtained a second warrant authorizing the seizure of the ricin materials and equipment.

B.

Following Vane's arrest, the government sought to have Vane detained pending trial. The magistrate judge scheduled a combined preliminary and detention hearing to assess (1) whether probable cause existed that Vane attempted to develop, produce, stockpile, acquire, or possess ricin, and (2) whether Vane should be detained.

For the preliminary hearing portion, the government attempted to offer evidence via proffer. Vane objected, arguing that 18 U.S.C. § 3142, which outlines the standard for pretrial detentions, referred only to proffered evidence presented during a detention hearing, "not a preliminary hearing." App. 56:6–7 (discussing § 3142(f)). And he also contended that "[§] 3142(f) only allows the defense to provide [evidence] by proffer explicitly in the text."[5] App. 55:21–24.

Though the magistrate judge noted that "there's express permission for proffering at detention hearings," App. 56:25–57:1, he began with "a traditional preliminary hearing," App. 57:8–9, where the facts were introduced by a witness. The government called the FBI agent who had prepared the affidavit in support of the criminal complaint against Vane. After the agent testified on direct examination to the facts in the affidavit and to the fact that subsequent testing of residue on the seized glassware yielded multiple positive results for ricin, and after the agent was cross-examined, Vane stipulated to probable cause.

---

[5] The relevant provision reads: "The [defendant] shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f).

6

The magistrate judge then turned to the detention hearing.  The government again asked to proffer evidence, which the magistrate judge allowed.  As relevant here, the government proffered that Vane (1) was "a prepper," or "an expert in emergency preparedness," App. 70:14–15; (2) had "go bags" containing emergency supplies, as well as cash, precious metals, and 23 firearms in his home, App. 70:22–71:3, 73:5; App. 73:5; (3) had "an apocalypse checklist that had a list of steps to take in the event of an emergency," App. 71:6–7; and (4) had filed "an obituary to Legacy.com claiming that he had died," App. 71:22–25.

During a sidebar with the magistrate judge, the government next proffered a photograph seized during the search of Vane's home "of a handwritten list titled 'Plan' . . . , which laid out a step-by-step plan for [Vane] to fake his own suicide and claim life insurance benefits for his wife and children." App. 129.  The government also proffered that Vane had a prior misdemeanor conviction for bringing a firearm to a federal facility and had also been charged under state law for firing a weapon in public.

The government relied on this evidence to argue that it perceived Vane to be a danger to his family and community and a flight risk.  Seeking to rebut the presumption that he posed such a risk,[6] Vane emphasized his "longstanding relationship[s] within the

---

[6] Section 3142(e)(3) sets out a rebuttable presumption that arises when "no condition or combination of conditions will reasonably assure . . .  the safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed," as relevant here, an enumerated offense "listed in [18 U.S.C. § 2332b(g)(5)(B)] for which a maximum term of imprisonment of 10 or more years is prescribed."  The presumption applied because Vane's charged conduct under 18 U.S.C.

7

community," evidenced in part by multiple letters of support his friends and family submitted. App. 77:7–12.

The magistrate judge found that Vane had rebutted the presumption. But he concluded that the other statutory factors—the nature and circumstances of the charged offense; the weight of the evidence supporting that charged offense; Vane's history and characteristics; and the nature and seriousness of the danger to those around Vane—cut against Vane's pretrial release. In other words, the magistrate judge determined "that the totality of the circumstances," considering both the proffered and non-proffered evidence, "weigh[ed] in favor of detention pending trial." App. 92:10–11.

C.

Vane moved the district court to revoke the magistrate judge's detention order. He argued that § 3142(f)'s proffer provision applies only to information offered by a defendant during detention proceedings and not information offered by the government. *See, e.g.*, App. 102. Vane contended that because "[t]he detention statute contain[ed] no comparable provision authorizing the *government* to 'present information by proffer,'" the government was barred from doing so. App. 102.

The district court was unpersuaded. It explained that though "[t]he Fourth Circuit [hadn't] explicitly ruled" on the permissibility of proffers by the government under § 3142, App. 175:4, all other "circuits that have considered it have ruled that proffers, the type that

---

§ 175(a)—an offense listed in § 2332b(g)(5)(B)—carried a maximum term of life imprisonment.

the government [was] making here, can be made in connection with detention hearings," App. 175:7–10. The court also noted that a district court within the Fourth Circuit "specifically . . . has approved" the government employing such proffers. App. 175:10–12.

Satisfied that it could consider the government's proffered evidence, the district court evaluated the statutory factors for pretrial detention under § 3142(g), as had the magistrate judge. And like the magistrate judge, the district court found "that there [were] no conditions or combination of conditions that will assure the safety of the community" and "that there [were] no conditions or combination of conditions that will assure [Vane's] appearance at trial." App. 202:3–9. The court thus affirmed the magistrate judge's detention order.

This appeal followed.

## II.

Before addressing the merits, we address—and deny—Vane's motion to voluntarily dismiss this appeal.

Because Vane has now pleaded guilty to possession of ricin and awaits sentencing, he asserts that this appeal is moot and should be dismissed. We disagree. As another court has found, "[i]t is not uncommon for appellate courts to resolve urgent motions by filing an expedited and summary order, later to be followed by an opinion that provides the reasoning underlying the order." *United States v. Perez-Garcia*, 96 F.4th 1166, 1172 (9th Cir. 2024).

9

That's precisely what we've done here. And though Vane no longer challenges his pretrial detention, the legal issue implicated in his detention—the government's ability to proffer under § 3142(f)—remains live.

Moreover, "[w]e already heard and conclusively resolved the merits of [Vane's] appeal in a dispositive order, and no party disputes that we had jurisdiction when we decided the case." *Id.* at 1173. That the dispositive order was a summary order doesn't make it any less binding, nor does it render this opinion advisory. *Id.*

We note also that the specific contours of proffer rights under § 3142(f) are a matter of first impression for our court, and issuing an order without this opinion "would deprive the legal community as a whole of the benefit of an appellate court decision that adjudicated [a] properly presented question[] concerning" those rights. *Id.* at 1174 (cleaned up). It might also require "later panels to duplicate our efforts while confronting the exact same issue[]" or "incentivize parties to strategically prevent the publication of a decision adverse to their interests." *Id.* These jurisdictional and equitable principles, as well as judicial efficiency caution against finding mootness here.

We thus deny Vane's motion.

### III.

### A.

Vane's sole argument on the merits is that the district court erred by relying on information that the government introduced by proffer. Vane asserts that neither the Bail Reform Act's text nor its legislative history and purpose support the district court's

10

interpretation.  We review this question of statutory interpretation de novo, *see United States v. Council*, 77 F.4th 240, 246 (4th Cir. 2023), and review the district court's detention order for clear error, *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (en banc).

B.

We begin, as we must, with the statute's text.  *See McAdams v. Robinson*, 26 F.4th 149, 156 (4th Cir. 2022).

Section 3142 governs pretrial detention, and subsection (f) allows a defendant to "present information by proffer."  That subsection also allows the defendant "an opportunity to testify, to present witnesses, [and] to cross-examine witnesses who appear at the hearing."  18 U.S.C. § 3142(f).  The sentence that follows explains that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of *information* at the hearing."  *Id.* (emphasis added).

Subsection (g) sets out the factors that a judicial officer considers in its pretrial detention decision: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the [defendant]," (3) "the history and characteristics of the [defendant]," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  *Id.* § 3142(g)(1)–(4). Taking this "available *information*" together, the judicial officer determines "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.* § 3142(g) (emphasis added).

11

C.

Vane's argument is straightforward: because § 3142(f) expressly grants the defendant the right to proffer information but is silent on the government's right to do the same, the government has no such right. According to Vane, this negative implication controls, rendering the text clear that "the government cannot meet its evidentiary burden by way of proffer." Appellant's Br. at 10.

At first blush, Vane's argument makes sense. After all, silence in a statute is often meaningful. As one example, Vane directs us to *United States v. Roof*, 10 F.4th 314 (4th Cir. 2021), where we instructed that "because we take it as a given that Congress knows how to say something when it wants to, its silence controls when it chooses to stay silent." *Id.* at 390. But in that case, the defendant was attempting to incorporate a mens rea element into a statutory provision that lacked one in the text. *Id.* at 389–90. Here, by contrast, Vane isolates proffers from the list of rights afforded to defendants to exclude them by negative implication from the tools the government can use to meet its burden for detention.

At bottom, the "force of any negative implication depends on context." *United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019) (cleaned up). And the context simply doesn't support Vane's interpretation.

Consider that § 3142(f) is not just about proffers. Indeed, the provision also allows a defendant to testify, present witnesses, and cross-examine witnesses. But Vane, for good reason, doesn't argue that the government would also be prohibited from calling and cross-examining witnesses, which are common and, frankly, critical tools in any adversarial proceeding.

12

Yet that's the logical conclusion of his argument. If the government can't present evidentiary proffers in detention hearings because § 3142(f) is silent on the point, then the government should likewise be precluded from presenting and cross-examining witnesses. We wouldn't reach that absurd result.

We're struck too by the statute's repeated reference to "information" offered, rather than "evidence," underscoring that the judicial officer should consider a broad swath of available information, unrestricted by "[t]he rules concerning admissibility of evidence in criminal trials." 18 U.S.C. § 3142(f). The statute contemplates that the judicial officer will hear and assess preliminary information (as would be presented by proffer) at an early and informal stage in the proceedings to determine whether the government has met its initial burden to justify detention. *See, e.g.*, *United States v. Martir*, 782 F.2d 1141, 1144–45 (2d Cir. 1986) ("While the [statute] is silent concerning how the government is to proceed at a detention hearing, the thrust of the litigation is to encourage informal methods of proof.").

Properly put in context, the better reading of § 3142(f) is that it explains the rights afforded to the defendant and the burden imposed on the government. But the statute places no bar on how the government is to meet that burden.

We're not alone in our reading. Several other circuit courts to consider this question (however glancingly) have agreed that the government may proceed, at least in part, by proffer. *See United States v. Stone*, 608 F.3d 939, 948–49 (6th Cir. 2010) ("However, conducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court."); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("Every circuit to have considered the matter has permitted the Government to proceed by way of proffer."

13

(cleaned up)); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987) ("We hold that the government as well as the defense may proceed by proffering evidence subject to the discretion of the judicial officer presiding at the detention hearing."); *Martir*, 782 F.2d at 1145 ("In light of the [statute's] mandate for informality and the need for speed at a point where neither the defense nor the prosecution is likely to have marshalled all its proof, the government as well as the defendant should usually be able to proceed by some type of proffer where risk of flight is at issue."); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("As in a preliminary hearing for probable cause, the government may proceed in a detention hearing by proffer or hearsay.").[7]

These cases emphasize two important principles. First, the government's ability to proceed by proffer doesn't change its ultimate burden of persuasion to show by clear and convincing evidence that the defendant is dangerous or by a preponderance of the evidence that he's a flight risk. And second, the judicial officer retains discretion to require more than the government's proffer to prove that detention is warranted.[8] *See United States v. Edwards*, 430 A.2d 1321, 1334 (D.C. 1981) (en banc) ("If the court is dissatisfied with the

---

[7] Although we haven't squarely addressed this issue, we've suggested that "[e]videntiary proffers are approved by 18 U.S.C. § 3142(f)." *United States v. Williams*, 753 F.2d 329, 331 n.7 (4th Cir. 1985); *see also United States v. Singh*, 860 F. App'x 283, 286 (4th Cir. 2021) (Diaz, J., dissenting) ("Moreover, the government was entitled to make, and the court was entitled to rely upon, evidentiary proffers at the detention hearing.").

[8] We're inclined to agree with the government that it met its burden to detain Vane pending trial even without considering the information that it proffered. *See, e.g.*, Appellee's Br. at 36–39.

14

nature of the proffer, it can always, within its discretion, insist on direct testimony." (cleaned up)), *cert. denied*, 455 U.S. 1022 (1982).[9]

Allowing both parties to proffer information also promotes the purpose of detention hearings. These hearings, though they implicate a liberty interest, are not meant to be "mini-trials." *Martir*, 782 F.2d at 1145. The judicial officer holds a detention hearing when "neither the defense nor the prosecution is likely to have marshalled all its proof" and when the defendant may pose either a risk of danger or flight, giving the parties a "need for speed." *Id.* Requiring the government to offer live testimony could stymie the intended efficiency of these proceedings to the benefit of neither the prosecution nor the defendant, who would remain detained until those witnesses could be identified and examined (as well as the evidence underlying their testimony). And, of course, the district court's decision to detain isn't set in stone, as the defendant can ask the court to revisit the question if his circumstances "material[ly] change." App. 92:12–14; *see also* App. 201:24–202:1.

We also struggle to see how a witness unbound by the rules of evidence could ensure more reliable testimony than that offered in a proffer. The agent who testified before the magistrate judge, for instance, conceded that he didn't know when the traces of ricin were deposited in the glassware or the toxicity of the ricin toxin in the glassware. *See, e.g.*, App. 63:16–18; App. 64:11–24.

---

[9] The *Edwards* court interpreted a District-specific bail statute, which the federal Bail Reform Act imported in part. In that case, the court held that the District of Columbia statute met constitutional due process requirements. *Id.* at 1337–38.

15

For these reasons, we decline to upend detention hearing procedure without a textual basis for doing so.[10]

IV.

We hold that 18 U.S.C. § 3142 entitles the government to make evidentiary proffers during detention hearings.  The district court's order is

*AFFIRMED*.

---

[10] Because § 3142(f)'s text doesn't bar the government from offering proffered evidence, we don't reach the statute's legislative history.  *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) ("However, we need not address legislative history if after analyzing the text, structure and context, we conclude that the language is unambiguous." (cleaned up)).